OREL J. MYERS, as Receiver of Palm Beach Bank & Trust Company, *Appellant*, v. THE FEDERAL RESERVE BANK OF ATLANTA, a banking corporation, *Appellee*.

Division B.

Opinion filed April 29, 1931.

Petition for rehearing denied May 23, 1931.

410

*Blackwell, Donnell & Moore,* of West Palm Beach, for Appellants;

*Metcalf* and *Hiatt,* of West Palm Beach, for Appellees.

DAVIS, J.—Federal Reserve Bank, the appellee, having some items for collection which were drawn on the Palm Beach Bank & Trust Company sent them with a cash letter to the latter bank for collection and remittance. Palm Beach Bank & Trust Company collected the items merely by charging them to the respective depositors' accounts and attempted to pay the Federal Reserve Bank by drawing two exchange drafts on its correspondent bank, namely, the Atlantic National Bank of Jacksonville. These drafts amounted to $77,586.84 and $22,728.35, respectively.

Before the exchange checks were actually paid by the

correspondent bank, the Palm Beach Bank & Trust Company was closed by the Comptroller because of insolvency on June 28, 1926.

Prior to the closing of the Palm Beach Bank & Trust Company, the exchange checks, in due course of banking practice, reached the correspondent bank and were there presented for payment. The correspondent bank refused to pay the drafts because of the insolvency of the drawer, the Palm Beach Bank & Trust Company, altho it. had received the drafts and stamped them as "Paid" before it received notice that the Palm Beach Bank & Trust Company had closed.

Proceedings were then taken in the Circuit Court of Palm Beach County by Federal Reserve Bank which filed its petition based on the foregoing state of facts and asked for a decree adjudging a preference against the statutory Receiver of the Palm Beach Bank & Trust Company, which is the appellant. here. The lower court allowed the preference upon the authority of Atlantic National Bank of Jacksonville v. Pratt, 95 Fla. 822, 116 So. 635, and like cases.

In addition to allowing the preference, the Court below impressed with a trust all the money which had come into the hands of the appellant, as statutory receiver of the closed bank. The Court also impressed with a trust the money which the closed Palm Beach Bank & Trust Company had on deposit with the Atlantic National Bank at the time the former bank closed.

The appeal here alleges as erroneous (1) the allowance of any claim for preference at all; (2) the allowance of a lien by way of a trust impressed upon the cash of the Palm Beach Bank & Trust Company at the time it closed; and (3) the holding that under any circumstance the Federal

Reserve Bank would be entitled to a lien on the funds on deposit with the correspondent bank, namely, the Atlantic National Bank of Jacksonville. There is also involved here the question whether a claim for reference can be made, after a claim has once been submitted and filed as a common claim only, where the changed character of the claim takes place within the statutory period of one year for presenting claims against closed banks.

It may be said to be well settled in this State that in order to impress a trust upon the assets of an insolvent bank in the hands of a statutory receiver or liquidator in this State, it must be shown that the assets upon which the trust is to be impressed were increased by the addition to such assets of other assets which belong to the claimant, and that the added assets must be traced into the fund or other assets upon which the trust is to be impressed. Glidden vs. Gutelius, 96 Fla. 834, 110 So. 140.

It has also been settled by a very recent case decided by this Court, but not yet officially reported, that when a check is presented to a drawee bank for collection, and the drawer has on deposit sufficient funds to meet the check, the drawee bank having in its possession the necessary funds to pay it, the check in contemplation of law, in so far as its relationship to the general assets of the bank or the cash on hand is concerned, is paid when accepted by the drawee bank, even though under section 6928 C.G.L., 4842 R.G.S., the check itself is not an assignment in so far as the liability of the bank is involved before the check is presented and accepted by the bank upon which it is drawn. Bryan v. Coconut Grove Bank & Trust Co. Receiver, 101 Fla. .......... 132 So. ......, decided Feb. 24, 1931.

As this court said in the last mentioned case, speaking through Mr. Chief Justice Strum:

"The Receiver contends that no preference should be allowed appellant because the bank's assets coming into his hands were not increased by the transaction between the bank and appellant. That contention can not be sustained. On June 8, 1926, The Bank of Coconut Grove *owed* appellant the sum of $14,420. as a general debtor. When on that date appellant drew and delivered the check in question to the drawee bank, and the bank accepted that check as the equivalent of cash under the circumstances stated, the effect of the transaction was the same as if appellant had drawn out the money, and received manual custody of it, afterwards returning it to the bank, sacked, sealed and labeled, for transmission to New York, and not for general deposit. In contemplation of law the amount represented by the check passed out of the hands of the bank into the hands of appellant in payment of its existing indebtedness to appellant after which the funds were again returned to the bank for a specific purpose and in a different status, and so remained when the receiver took charge of the bank's assets. Thus the money belonging to appellant must be regarded as having passed into the hands of the receiver, increasing by that amount the assets to be administered by him."

So on the authority of the foregoing case, we must hold in this case that when the Federal Reserve Bank sent to the Palm Beach Bank & Trust Company certain items for collection and remittance, and the Palm Beach Bank & Trust Company collected such items by charging them to the respective depositors' accounts and attempted to pay such Federal Reserve Bank by drawing its exchange on its correspondent bank, the Atlantic National Bank of Jacksonville, and said Palm Beach Bank & Trust Company at the time it did this had moneys on hand, either in its vault or on deposit with its correspondent

bank to pay the exchange, that in contemplation of law the items sent for collection and charged to the account of the depositors before the bank closed, at a time when there was sufficient moneys on hand or to the credit of the bank to enable it to make remittance, must be regarded as having been actually collected and thereafter to have passed into the hands of the receiver or liquidator of the closed bank as the property of the Federal Reserve Bank, which to that extent increased the amount of assets which passed to him to be administered by such receiver or liquidator *for the bank's creditors.*

Such transaction, of course, did not increase the actual total amount of assets which passed to the possession of the receiver or liquidator, but it did increase the amount of assets which passed to the receiver or liquidator *for the purpose of his administration as such.*

Questions of this kind are not to be decided on the basis of whether or not the actual total assets or the total of a particular fund coming into the general control or possession of the receiver or liquidator are increased, but rather on the basis of whether or not the portion of that fund which he has to distribute generally in his capacity as receiver or liquidator is by reason of the transaction larger than it would be had the transaction not occurred.

In this case it appears that the Palm Beach Bank & Trust Company had done everything which on its part was essential to constitute a separation of these collection items from its cash in vaults or its credit balance with other banks. Had the bank remained open a short time longer, the remittance check drawn on the Atlantic National Bank, which had already been forwarded before the bank closed, would have been fully paid, in which event there would be no question that the amount of money

in vault and bank balances passing to the receiver or liquidator would have passed to him diminished by exactly that amount.

Altho the contingency of the closing of the bank while the remittance check was in the course of passing through banking channels interrupted the *realization* of payment by the payee, that contingency did not interrupt or dispense with the *fact* of payment by the payor in contemplation of law. This is true because before the bank closed it had done everything within its legal power to do, in the form in which it was done, to make remittance. The moneys which it had collected were moneys to which it had no title after they were collected.

While theoretical principles controlling matters of this kind must be kept in mind and adhered to, the fact should not be lost sight of that this is a practical age, and that the business of banking is largely conducted by means of transfers of exchange and credit balances between the various units of our banking system, both state and national.

Where a transaction between two banks is strictly a cash transaction and so understood and acted on by all the parties, the fact that one if the parties uses one of the banking conveniences of the present day to make its remittance which it otherwise would have made in currency or cash, should not operate to the prejudice of the bank to which such remittance is attempted to be made.

This is especially true under existing systems of banking where owing to banditry and other dangers, the transportation of large sums of currency from place to place to complete banking transactions in daily course of business would be attended with unusual hazards and would keep in constant and unnecessary circulation our

cash mediums which are now kept safely in convenient, secure and accessible vaults at central places. It would seriously impair the efficiency of our banking system to transact the ordinary business of the nation, if by reason of adherence to highly technical theories of the law relating to trusts, the courts of the country should force the use of currency and cash in remitting moneys in order to avoid losses in matters of the kind at bar.

Here there was no commingling of funds by consent nor mutual accounts between the banks involved. The transaction was entirely a proposition of collection and remittance, in which the Palm Beach Bank & Trust Company, for its own convenience, and for its protection against the liability for loss attendant on the transportation of money and currency, as well as to save the cost of such transportation, used one of its banking conveniences constituting a part of its banking system, which it no doubt had established and was keeping for that purpose. In so doing it merely did that which would ordinarily have been handled by it by the actual separation of a certain amount of cash from that in its bank vaults and thereafter shipping it in kind to the Federal Reserve Bank.

Under the circumstances, we think that in passing on the rights of the parties here *inter sese* we should look at the real nature of the transaction, and apply to it the rule which would govern the case, had actual cash, instead of remittance by check, been prepared for delivery but never delivered, to the Federal Reserve Bank.

The next question is whether or not the court erred in impressing a trust upon both the cash in the vaults of the bank and the credit balances which the bank had with the Atlantic National Bank.

The statutes of Florida with reference to banking contain a provision reading as follows:

"6071. (4140) RESERVE. Every banking company shall at all times have on hand in lawful money of the United States an amount equal to at least twenty per cent. of the aggregate amount of its deposits. Whenever the lawful money of any such company shall be below the amount of twenty per cent. of its deposits, such company shall not increase its liabilities by making any new loans or discounts otherwise than by discounting or purchasing bills of exchange payable at sight, nor make any dividend of its profits until the required proportion between its deposits and its lawful money of the United States has been restored. And the Comptroller may notify any banking company whose lawful money reserve shall be below the amount above required to be kept on hand to make good such reserve, and if such company shall fail in thirty days thereafter so to make good its reserve of lawful money, the Comptroller may appoint a receiver to wind up the business of the company, as provided in section 6102. (Ch. 3864, Acts 1889, Sec. 27, revised).

6072. (4141) DISPOSITION OF PART OF RESERVE. Three-fifths of the reserve of twenty per cent. required by the preceding section to be kept may consist of balance payable on demand due to the company from banks or bankers in other cities with whom such company may keep its current account; or of bonds of the United States, State of Florida, counties and cities of the State of Florida, said bonds to be approved by the Comptroller. (Id. Sec. 28, amended by Ch. 4750, Acts 1899.)

As will be noted from the last quoted section, three-fifths of the cash reserve of a state bank may consist of balances with other banks, payable on demand, or of certain classes of bonds.

But in contemplation of law, every bank which is open and doing business, had ''on hand in lawful money'' as required by section 6071, C.G.L. *supra,* twenty per cent. of the aggregate amount of its deposits, or as provided by section 6072 C. G. L. *supra,* twenty per cent. of the aggregate amount of its deposits in cash less the permissible three-fifths of the twenty per cent. reserve which may be kept in the form of bank balances, etc.

This is true, even though under the statute a bank may be left open a reasonable length of time after the cash reserve falls below the required minimum, in order to enable the banking company whose lawful money reserve shall be below the amount above required to be kept on hand ''to make good such reserve'' upon notification by the Comptroller as the statute requires.

In the case of Myers, Receiver v. Matusek, 98 Fla. 1126, 125 So. 360, this court, speaking through Mr. Justice Brown, said:

''To ascertain, therefore, at any given time, the amount of real cash assets of the bank, the funds in its own vault and the moneys of the bank deposited to its credit in its correspondent banks would have to be summed up and included.''

It must be borne in mind that the transaction involved here was one between two banks in our general banking system. Here certain checks were sent for collection by one bank to another bank. The checks when and if paid in cash would have resulted in the withdrawal of just so much cash from the cash assets of the paying bank. If the amount of all the checks had exceeded the total amount of cash in the vault, then the bank upon which the checks were drawn, and by which they were to be paid, would have been required to resort to its cash

balances in other banks, which were a part of its lawful cash reserve, in order to make the required payment.

Therefore, since the payment of the checks when collected would have been out of the entire cash assets, or lawful cash reserve of the bank, and since under the circumstances of this case, which is a case between two banks, we have regarded the checks as having been paid in contemplation of law out of such lawful cash reserve, it follows that it was not error for the court below to impress a trust upon both the cash in vault and the cash balance in other banks. Both together constituted a part of the lawful cash reserve which was used to pay such checks.

In short, the lawful cash reserve which the receiver found on hand, or such of it as was left when he took charge was just that much larger than it would have been had the bank not closed while the remittance check was in circulation on its way to the Atlantic National Bank, the correspondent bank to be paid when presented and the funds represented thereby turned over to Federal Reserve Bank.

Nor does this holding violate the rule which requires tracing, nor conflict with other cases on this subject decided by this court. In this case the fund has been traced. It has been traced to the total lawful cash reserve fund of the bank which consists of its credit balances and its cash in vault. Here it appears that the amount of the remittances, $100,315.19 was large. It required a resort to both the cash in vault and the credit balance in other banks to make remittances and enable the bank to continue to do business. Under the circumstances shown it was impossible to remit all of the funds in currency. So both the cash in vault and the credit

balance was in contemplation of law increased by the amount of the remittance when the remittance check drawn to accomplish the withdrawal and transfer was not honored by the bank upon which it was drawn.

On the other hand, it would not necessarily follow that a trust fund which merely comes into the hands of the bank for some purpose of another, and is there found when the bank closes, becomes a part of any fund of the bank except the particular one to which it was actually applied or could be specifically traced.

Ordinarily such trust fund would become commingled with the cash in vault only. In that case such cash in vault only would be solely responsible to be charged with a trust for its repayment, unless, as was done in the Matusek case, such trust fund could be specially traced into a particular bank balance with a correspondent bank, so as to become a part of such bank balance, and leave such bank balance subject to be impressed with a trust to the extent that the bank balance was increased by the addition to it of such trust moneys.

Here the act and conduct of the Palm Beach Bank & Trust Company before it closed reveals that the remittance was to be made to the Federal Reserve Bank out of the total lawful cash reserve of the Palm Beach Bank & Trust Company. In contemplation of law such remittance was withdrawn from and was made out of such total lawful cash reserve, because the money in vault was not sufficient to make it and enable the bank to continue the banking business, thereby requiring resort to the bank balance of the Palm Beach Bank & Trust Company with the Atlantic National Bank to fulfill payment.

Where a remittance is regarded as having been made out of the total lawful cash reserve fund, even though a

check is drawn only upon a constituent part of such fund, such as a particular bank balance, the whole fund is increased when the check is not paid because of the closing of the bank. Consequently the whole fund, as increased, passes to the receiver or liquidator and upon established *equitable principles* can be charged with a trust to the extent that the increase extends to such whole fund.

But where a remittance is received by a bank, as distinguished from having been paid by such bank in contemplation of law, the same rule does not necessarily apply. This follows because in the eyes of the law where a remittance is received and the title thereto never passes to the bank, such remittance *received* can never become a part of any lawful fund of the bank, such as its lawful cash reserve fund. However, it can become so commingled with the bank's funds or assets as to enable the owner who traces the same to any particular account or fund, to reclaim his property upon a particular showing of such fact.

The latter principle referred to is that which controlled the decision of this court in the Matusek case. The former principle controlled the decision of this court in the Bryan case, both of which cases we have cited and followed in this opinion.

The Bryan case did not, as seems to be generally supposed by members of the bar, involve the question of whether the preference there claimed could be impressed upon the *entire* assets of the insolvent bank and the holding in the Bryan case should not be so construed.

In that case the record showed that the check there involved, just as the check in this case, was drawn on another bank but was not paid because the drawer bank failed before the check reached the drawee bank.

But after the receiver took charge of the affairs of the Bank of Coconut Grove, such receiver actually collected the proceeds of such disputed check and by virtue of a stipulation such proceeds were kept by such receiver in a separate account in another bank to abide the decision of the court in that case. The decision of this court merely determined that Mrs. Bryan, not the receiver of the closed bank, was entitled to such proceeds because of the preference allowed.

So in this case the court below has merely adjudged and decreed:

"That the petitioner is entitled to a preferred claim, with a lien on the cash in the Palm Beach Bank & Trust Company, and the funds on deposit in the Atlantic National Bank in Jacksonville, as of the time of closing of the Palm Beach Bank & Trust Company, unless there are other equities, or other claims with reference to these same funds which ought to be considered by the Court before petitioner should receive payment of its claim. Thereupon

IT IS ORDERED, ADJUDGED AND DECREED that the Receiver of the Palm Beach Bank & Trust Company show cause, if any he has, within twenty days from date, why a decree should not be entered requiring the payment of $85966.61 as a preferred claim out of the cash in the Palm Beach Bank & Trust Company, as of the time of its closing, and out of the fund on deposit in the Atlantic National Bank of Jacksonville, as of the time of the closing."

Such decree is a proper one to enter in a case of this kind, because there may be other equities or other claims with reference to the same funds which ought to be considered by the court, and determined, before any particular claimant receives payment of his claim as a

preference. To order a bank receiver to pay a preferred claim without some consideration given to the other possible preferred claims in the same asset or fund, would be unwarranted under the law and beyond the scope of the issues involved because determinative of rights of other potential claimants not before the court, so as to make its decree not a binding adjudication.

The remaining question involved is whether or not a claimant who has once filed his claim without asserting a preference, can be permitted to do so at a later date, but within the one year allowed by the statute for filing claims generally.

Under the statute (Section 18, Chapter 13576, Acts of 1929) claims of every kind, including claims for preference, are covered. Unless filed within one year after the qualification of the liquidator as required, they cannot be enforced. State v. Tunnicliffe, 98 Fla. 731, 124 So. 279 (decided before statute was changed in 1929).

But the statute requires no particular form for filing claims, leaving that to the choice of the claimant. The claimant also has the option of filing his claim promptly or of waiting until the last minute of the last hour for doing so.

The principal consequence of his delaying the filing of his claim is that in the event dividends are paid before the time for filing claims expires, he would not be entitled to participate in such dividends as are declared while his claim remains unfiled through his voluntary delay.

And inasmuch as a claimant may wait until the last minute to file a preferred claim when he has never filed any claim at all, it appears that on a like principle he may at the last minute amend his once filed common creditor claim so as to assert a preference, even though he originally filed it as a claim without preference.

But an amendment so made would only take effect from the date of making it. The acts of the receiver or liquidator prior to the date of the amendment could not be affected by the fact of the amendment.

It is the duty of claimants against defunct banks to promptly file their claims, both common and preferential. While the statute permits a full year to do so without completely barring a claim, it does not follow that the bank liquidator must wait until that year has completely expired before paying available dividends to those claimants who have promptly filed their claims and who have their claims on file when the receiver or liquidator is authorized by the Comptroller to pay a dividend out of the bank's assets.

The policy of our banking laws as favoring a prompt and expeditious handling of the affairs of defunct institutions has already been referred to by this court in the case of Amos v. Conkling, 99 Fla. 206, 126 So. 283, where the court said:

"Delay in final settlement of affairs of an insolvent bank or liquidating bank is fatal to the interests of both creditors and stockholders. A speedy judgment of delinquent banks is necessary to the efficiency and utility of the law."

Another point raised is that the claimant by filing a common claim elected its remedy and cannot now be permitted to assert a preferred claim after once having filed its claim as one without preference. This might possibly be true if it appeared that after filing its claim without asserting it was a preferred creditor, it had drawn dividends or otherwise asserted claims and rights, and received benefits, which could only have been received by it as a common creditor. But the merely filing, without

00:00:13426

more, of a common claim, does not preclude its amendment within the statutory period, so as to make it assert a preference, altho the amendment, as we have stated, will not prejudice what may have been done by the officials in liquidating the bank before the claim was amended and without knowledge on their part that a claim of preference was to be insisted on.

There are unquestionably cases where a right to preference might be waived, and the claim treated as a general claim against the bank for money had and received by it for which it would be responsible as a common debtor, but in every case where such waiver is claimed, the facts should show something more than a mere filing of the claim as a common claim in order to have this result.

Finding no error in the record, the decree of the Circuit Court must be affirmed.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS, J., concur in the opinion and judgment.

BROWN, J., dissents.