M. A. SMITH, Liquidator, Bank of Bay Biscayne, v.
AMERICAN EXPRESS CO.

152 So. 171.
Opinion Filed December 30, 1933.
Petition for Rehearing Denied January 27, 1934.

*Edward E. Fleming* and *Loftin, Stokes & Calkins,* for Appellant;

*Shutts & Bowen, Crate D. Bowen* and *L. S. Bonsteel,* for Appellee.

WHITFIELD, J.—By bill in equity the American Express Company seeks to be decreed entitled to a preference in payment from the assets of an insolvent State bank in the hands of a liquidator appointed by the State Comptroller under a statute of the State of Florida.

The chancellor decreed for the complainant American Express Company, and the liquidator appealed.

Appellant states the "Question involved: is the Express Company entitled to payment in full of the amount due to it by a defunct Miami bank, when the account is one carried on the books of the bank, with the consent of the Express Company, as 'deferred settlement account,' and arises out of the sale by the bank for the express company of the latter's traveler's checks, under an exceptional arrangement by which the bank was permitted to mingle with its general funds the proceeds of sales of such checks and to use in its ordinary banking operations such proceeds, and to settle the account twice monthly, by remitting to the express company, not the proceeds of the sales of such checks, but by draft drawn by the bank on its New York City bank correspondent, payable out of the general credit carried in New York City by the Miami bank, of which the proceeds of the checks were not a part: or, is the express company a general creditor of the bank, because it credited the bank and agreed to accept semi-monthly settlements by draft drawn by the bank on its New York City correspondent? The circuit judge, on bill, answer and evidence taken before a special examiner, answered the first question in the affirmative, and the second in the negative, and decreed payment in full to the express company."

Appellee states that: "The real question to be decided on this appeal as presented by the pleading should read as follows:

"When a bank acting as selling agent for the issuing company receives traveler's cheques, and by executing trust receipts agrees to hold the cheques and the proceeds thereof when sold as *the property of the issuing company at all times,* and has been accustomed to remitting proceeds daily, but because of press of business, and for the purpose of eliminating much detail work, secures permission to remit

said proceeds semi-monthly, instead of daily, as before, and opens a bank account with itself, in which the proceeds are placed, pending remittances, does the mere change as to time of remitting, plus the fact that the bank account is kept solely for the special purpose of holding the proceeds, pending remittances, change the relationship of the bank to the issuing company from one of trustee to that of a general debtor, and, upon the bank's insolvency, while some of the said proceeds are in its custody in said account, is not the issuing company entitled to a preferred claim in the amount of the cheques sold, but for which no remittance has been made as agreed?"

The bank engaged to sell traveler's cheques of the American Express Company for a commission on sales. Receipts given by the bank for the "cheques" to be sold by it stated that the bank "agrees and undertakes that the said cheques while in its custody shall have the same care and protection as its own bearer securities; and further agrees to accept responsibility for the due issue thereof and to account to the American Express Company therefor and for the proceeds received from the sale thereof. The same cheques until sold and the proceeds thereof when sold shall at all times remain the property of the American Express Company."

At first the bank remitted daily covering sales. Later an "American Express Company traveler's cheque account" in the bank was opened by agreement, the bank to "credit the proceeds of sales (of traveler's cheques) every day to that account," to be remitted weekly by the bank's check on New York. For several years before the bank failed remittances were made semi-monthly. The correspondence between the parties showed the bank deposited with itself the proceeds of daily sales of American Express Company

traveler's cheques in a "traveler's cheque account" sometimes referred to as "deferred settlement account" and that the bank with the acquiescence of the American Express Company, had the use of the money in the "traveler's cheque account" or "deferred settlement account" between semi-monthly remittances, and that remittances were made not of the funds as received from sales of traveler's cheques, but by the bank's draft or check on its funds in a New York bank. The "traveler's cheque account" in the bank was not subject to check or draft by the American Express Company; but it does not appear that during the semi-monthly remittance periods the monies or funds in the "traveler's cheque account" were, or were by either party intended to be, set apart or severed from the general funds of the bank. By consent and acquiescence of the American Express Company, the bank had the use of the daily receipts from sales of traveler's cheques between semi-monthly remittances, which consent proceeding or practice was inconsistent with and manifestly by acquiescence superseded the provision in the receipts given by the bank for traveler's cheques to be sold by it, that "the proceeds thereof when sold shall at all times remain the property of the American Express Company."

Nothing is shown to indicate that the money deposited in the "traveler's cheque account" in the bank was to be held as collected in a separate fund in the bank solely and exclusively for the use at all times of the American Express Company. There is express reference in a letter by the company to the bank's "use of the money" collected by the bank for sales of travelers cheques between semi-monthly remittance dates. A preference should not be allowed.

The facts shown by the record clearly differentiate this case from those in which preferences have been adjudicated.

In American Express Company v. Cochrane, as Liquidator, 103 Fla. 426, 137 So. 693, the bank had remitted drafts, which because the bank failed in the meantime were unpaid, covering proceeds of sales of traveler's cheques from June 23 to June 28, 1926, inclusive, thereby having severed the amount of such remittances from the funds in the bank before it failed; and it did not appear that the bank had been authorized by the company to "open an account on your books, entitled 'American Express Company Traveler's Cheque Account' and credit the proceeds of sales every day to that account" and to remit on stated dates, as was agreed in this case.

Here the collections were credited to a stated account to be remitted on the 16th and last days of each month, the bank to have the use of the funds between the semi-monthly dates for remittances. The bank in this case failed to open on June 11, 1930, having then to the credit of the company for traveler's cheques sold between June 1 and June 11, 1930, $17,342.80, no remittance for that period having been attempted, the next regular remittance date being June 16, 1930. See Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 37 Law. Ed. 363.

In City Bank of Ft. Lauderdale, et al., v. Hart, as Executor, 102 Fla. 530, 136 So. 446, there was no agreement to credit the funds to an open account.

In Newsom, as Liquidator, v. Acacia Mutual Life Ass'n, et al., 102 Fla. 567, 136 So. 389, the express agreement was that the deposit should be held for the sole use and benefit of the depositor.

In Myers, as Receiver, v. Fed. Res. Bk. of Atlanta, 101 Fla. 407, 134 So. 600, there was an attempted remittance for collections made to be remitted.

In Bryan, as Admrx., v. Coconut Grove Bank & Trust

Co., 101 Fla. 947, 132 So. 481; Cesterreicher v. McNair, 54 Fed. (2d) 798 and other like cases, the funds had been severed from the general funds of the bank when the bank closed.

In City of Miami v. Shutts, 59 Fla. 462, 51 So. 929, and other similar cases the relation was of principal and agent, with no elements of a relation of debtor and creditor.

Reversed.

DAVIS, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.

## ON PETITION FOR REHEARING.

PER CURIAM.—In Newsom v. Acacia Mutual Life Association, 102 Fla. 567, 136 Sou. Rep. 389, which is relied on by petitioner as ground for rehearing in this case, the proposition decided was that Citizens Bank & Trust Company, a bank which had a special legislative charter authorizing it to do a trust business without special license from the State as a trust company, the trust responsibilities undertaken by the bank could not be defeated by the peculiar manner in which the trust arrangement was executed.

In that opinion this Court referring to the proposition to be there decided, said:

"It is contended by the appellee and was so held by the court below, that the special contract between the parties fixed the status of the deposit as one of a special trust fund to be applied by the bank to and for a specific purpose and that the contract and agreement of the bank to pay interest on such fund did not change its status, nor convert it to a general deposit."

In that case this Court was dealing with the asserted right of the claimant to have adjudicated to it an admittedly *special* trust fund that had been deposited as a special trust

fund with a bank whose charter authorized it to receive and handle the fund in its *special* trust capacity. The sole question determined was that the way the bank had, with the consent of the claimant, handled it pursuant to the special contract, did not change the *special* trust character of the special fund to that of a general deposit freed of its trust character.

In this case the bank was not shown to have any trust powers nor was the question of an *express* trust of the kind mentioned in the Acacia Mutual Life case involved.

Rehearing denied.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.