MARY BAIRD BRYAN, as Administratrix *cum testamento annexo* of the Estate of William Jennings Bryan, deceased, *Appellant,* v. COCONUT GROVE BANK & TRUST Co., as Receiver of the Bank of Coconut Grove, *Appellee.*

Division A.

Opinion filed February 24, 1931.

Petition for rehearing denied May 1, 1931.

948

*Walsh, Beckham, Farley & Ellis,* of Miami, for Appellants;

*Burdine, Terry & Fleming,* of Miami, for Appellee.

STRUM, C.J.—Appellant seeks to recover in full, as a

preferred creditor, certain funds in the custody of Bank of Coconut Grove when that bank suspended business on July 1, 1926. The Court below held that appellant was a general creditor, and not entitled to preference.

On June 8, 1926, appellant, as Administratrix *cum testamento annexo* of the Estate of William Jennings Bryan, deceased, had on general deposit with the Bank of Coconut Grove the sum of $14,420.00. During the latter part of May, 1926, appellant decided to visit her son, William Jennings Bryan, Jr., in California. At that time Mr. Bryan, Junior, was in Coconut Grove, Florida, visiting his mother, the appellant, and was attending to business affairs of his father's estate.

Mr. George L. Reynolds was at that time Executive Vice-President of the Bank of Coconut Grove, had been an appraiser of the Estate of William Jennings Bryan, deceased, and Mr. Bryan, Junior, testified that Mr. Reynolds enjoyed the confidence of the Bryans in business affairs.

On May 28, 1926, Mr. Bryan, Junior, went to Mr. Reynolds at the bank, told him of the anticipated early departure of himself and his mother for California; discussed the then banking and business situation in Florida about which Mr. Bryan was "uneasy"; and told Mr. Reynolds that in view of that situation, and because he and his mother would be in California where they could not give their Florida affairs close supervision, that they intended to withdraw all deposits of his father's estate from Florida banks. Mr. Reynolds undertook to reassure Mr. Bryan and to dissuade him from so withdrawing the funds, asking Mr. Bryan, Junior, to leave the money in the Savings Department of the Coconut Grove Bank, but Mr. Bryan insisted upon withdrawing the money and placing

it on call in New York. Mr. Reynolds then requested that the funds be so placed through the Bank of Coconut Grove, as it would give that bank some publicity to so handle the funds, to which Mr. Bryan, Junior, assented.

Mr. Bryan, Junior, testified in part as follows concerning his conversation with Mr. Reynolds: "I asked him if the funds were so placed on call in New York through the defendant bank as he (Mr. Reynolds) suggested, whether they would be placed at the call of the defendant bank or at the call of the Administratrix of said Estate, and whether the funds so placed could be withdrawn by the said Administratrix on demand or whether they would have to be called by the defendant Bank of Coconut Grove. Mr. Reynolds stated that the funds would be placed in the name of the said Administratrix of said Estate, and that a receipt to her would be issued by the New York bank, and that the defendant Bank of Coconut Grove would have no interest whatever in the transaction other than a certain prestige that it would gain in placing the funds for the Estate. I told Mr. Reynolds that under no circumstances would we leave the funds in defendant Bank of Coconut Grove after we left Florida, but that if it would give him any prestige to place the money on call for us, that I would suggest to the said Administratrix, Mary Baird Bryan, that she let him place the funds on call for the Estate. This he said he would be glad to do."

This testimony of Mr. Bryan, Junior, is largely corroborated by the testimony of Mr. Thompson, Mrs. Bryan's Secretary, who also talked to Mr. Reynolds concerning the method of withdrawing the funds in question from the Bank of Coconut Grove and placing the same on call in New York.

Mr. Bryan, Junior, testified that he reported the con-

versation with Mr. Reynolds to his mother, the appellant, and left for California on June 1st or 2nd, 1926.

Prior to her departure for California about a week later, Mrs. Bryan testifies that she had a conversation of similar import with M. Reynolds; that relying on Mr. Reynolds' statements, and pursuant thereto, a check was delivered to Mr. Reynolds by Mrs. Bryan's Secretary on June 8, 1926, which check was drawn as follows:

"BANK OF COCONUT GROVE Number 1348
Coconut Grove, Florida, June 8, 1926.
Pay to the order of Bank of Coconut Grove Fourteen Thousand Four Hundred Twenty & no/100 Dollars, $14,420.00, to be placed on call, New York Exchange.

Estate of William Jennings Bryan
(Signed) Mary Baird Bryan, Administratrix."

This check was drawn against the funds of the Bryan estate then on general deposit in the Bank of Coconut Grove, which bank was both drawee and payee of the check.

Mr. Reynolds placed the check in his desk drawer. It was not actually cashed, nor charged to the Bryan Estate account, until June 26, 1926, nor was there any physical setting apart of the money in specie, or other earmarking thereof than by the check and negotiations above referred to.

Further concerning the delivery of the check, Mr. Bryan testified as follows: "The check dated June 8, 1926, was given to Mr. Reynolds for the special and definite purpose of segregating the funds of the Estate of William Jennings Bryan, deceased, from the general funds of the said defendant Bank of Coconut Grove for the special and definite purpose of being placed on call in New York and for no other purpose, and said check was so received by Mr.

George L. Reynolds. Before I left Florida, Mr. Reynolds stated to me that he would so receive it. Mr. Reynolds did not at any time intimate or suggest that he might not be able to so place said funds or that he would have to ascertain whether he could so place them. Had he expressed any doubt about the matter whatever I would have withdrawn the funds immediately before I left Coconut Grove on June 2nd, 1926.''

Mr. Bryan, Junior, had departed for California when the check was actually delivered, but his testimony last quoted appears to be based upon his conversations with Mr. Reynolds immediately prior to Mr. Bryan's departure.

On June 17, 1926, and again on June 19th and 21st, 1926, Mr. Thompson, Mrs. Bryan's Secretary, called on Mr. Reynolds, requesting a receipt from the New York bank for the funds in question. Finally, on June 22, 1926, Mr. Reynolds informed Mr. Thompson that the New York bank would not accept the money on call. This information was communicated by Mr. Thompson to the other members of the Bryan family in Coconut Grove. They in turn telegraphed the information to Mrs. Bryan in California. At Mrs. Bryan's request, Mr. Bryan, Junior, in California, wired his sister, Mrs. Ruth Bryan Owen, in Coconut Grove, Florida, to demand New York Exchange for the funds in order that they might be promptly transmitted to New York. This demand was made on June 26, 1926, by Mr. Thompson on behalf of Mrs. Bryan.

Concerning these transactions, Mr. Reynolds testified as follows: ''* * * I do not remember about the different parties. This was over two years ago. But I do remember that she (Mrs. Bryan) came to me, or it might have been one of the other parties - - - I don't remember the whole

conference - - - she said she would like to have that money placed in New York on call and I said, 'Well, I think that can be done.' She said she would like to have it that way. I think she said, so it would be subject to her call, so that she could get it for income tax or something like that, and asked how could she get it if it should be placed there. I said, 'It would be up to you,' and she said, 'The bank would not have anything to do with it?' and I said, 'No, it would not.' And she said, 'All right, I think we will have it placed in New York on call and do you think you can get it there?' I said, 'I think I can,' because we were placing accounts there all the way from $1,000.00 on up. * * *.

"Q. What did you state to Mrs. Bryan or to Mr. Thompson relative to what would be done with these funds if they were accepted to be placed on call in New York?

A. Well, I think she asked me to place it there and I told her that I felt sure that could be done, because we had placed them ourselves from $1,000.00 up. I took the matter up with the New York Bank and they informed me they could not take less than a certain amount, but as to the amount I could not say. * * *

"Q. Mr. Reynolds, I will ask you to state what representations were made by you, if any, to the effect that this check of $14,420 would constitute a separate fund with the Bank of Coconut Grove to the credit of intervenor and would be kept separate and apart from the estate funds in the Bank of Coconut Grove?

A. None, whatever, until it was carried through as she wanted it.

Q. What do you mean, 'Until it was carried through,'' by delivery of draft?

A. Well, delivery of draft or placed in New York until she wanted it, if it could be completed.

Q. Did you tell Mrs. Bryan or Mr. Thompson, William Jennings Bryan, Jr., or Mrs. Owen, or Major Owen that these funds of $14,420 would be placed in a separate fund and taken out of the general funds of the Bank of Coconut Grove?

A. I don't remember that I did. - - - You asked me if I told them these funds would be placed in the account. As well as I remember, I did not.

Q. As a matter of fact, when this check was drawn and delivered to you, was the sum of $14,420 then and thereupon segregated from the general funds of the Bank of Coconut Grove?

A. There was not. * * *

"Q. Did you assure Mrs. Bryan or Mr. William Jennings Bryan, Jr., or Mr. Thompson, or Mrs. Owen that the account—that is, the status of the account—would be changed by the giving of that check?

A. Not that I remember."

And concerning the interview between himself and Mr. Thompson on the 26th of June, when demand for New York Exchange was made, Mr. Reynolds further testified: "There was considerable conversation at that time, but I do not attempt to tell it, because it is not clear in my mind. I remember I got up from my desk and said: 'I will give you the money right now,' and they said they didn't want the money, they wanted New York Exchange."

Mr. Thompson flatly denies that Mr. Reynolds then, or at any other time, offered any cash in payment of the check, further testifying that pursuant to his instructions he demanded and received New York Exchange.

At any rate, on June 26, 1926, Mr. Reynolds withdrew the check from his desk drawer, drew a pen through the following language thereon: "To be placed on call New York Exchange," charged the check to appellant's account and at the same time delivered to Mr. Thompson a draft drawn by the Bank of Coconut Grove on the National Bank of Commerce in amount of $14,420.00, payable to appellant. Mr. Thompson immediately forwarded the draft to the plaintiff in Los Angeles, where it was received July 2, 1926. It was immediately endorsed by plaintiff and forwarded by air mail to the drawee bank in New York for payment.

Meanwhile, on July 1, 1926, the Bank of Coconut Grove suspended business, consequently the draft was not paid upon presentation to the drawee.

We have not undertaken to reproduce the evidence in all its details, but have stated the salient facts upon which appellant claims, and upon which the Receiver denies, that she is entitled to preferential payment in full from the bank's assets.

The Receiver's major contentions on behalf of the Bank are: First, that the transactions stated created a conditional agency on the part of the bank, and that only; which agency failed and terminated because its purpose was unfulfilled; second, that even though an absolute agency had been created, it would have failed and terminated because its object was impossible of performance; and, third, all agencies, conditional or otherwise, were definitely revoked by the demand and acceptance of the New York draft.

Appellant contends that acceptance by the bank of the check of June 8, 1926, drawn upon itself, in view of the circumstances and instructions pursuant to which

the check was delivered and accepted, constituted a segregation of the funds in question from the general assets of the bank, created a special deposit for a specific ·purpose, thereby constituting the bank an agent or bailee and not a debtor of appellant, which relationship was not altered by the subsequent acceptance of the New York draft.

· A deposit in a bank made in the ordinary course of business is presumed to be general. The burden of proof is upon the depositor to overcome such presumption by proof that the deposit was made upon such terms or under such circumstances as to constitute it a special deposit or a deposit for a specific purpose, as distinguished from a general deposit. Northern Sugar Corp. v. Thompson, 13 Fed. (2nd) 829; Morse on Banks & Banking (6 Ed.) Sec. 186.

Whether a deposit in a bank is general or special depends upon the contract resulting from the mutual understanding and intention of the parties with reference thereto. The law prescribes no particular formula of contract. Like all contracts, a contract of special deposit, or deposit for a specific purpose, grows out of the mutual intention and understanding of the parties. The purpose and terms of the deposit may be fixed by express agreement, or the intention of the parties may be, inferred from their declarations at the time the deposit was made, considered in connection with their conduct and all the other circumstances. Southern Sugar Corp. v. Thompson, *supra;* Fogg v. Tyler, 82 Atl. 1008; 39 L. R. A. (N.S.) 847; Johanna Paulina Carlson v. M. B, Kies, 134 Pac. 808, 47 L. R. A. (N.S.) 317; 3 R. C. L. 517.

The circumstances which distinguish special or specific and general deposits have been adverted to by this

Court in City of Miami v. Shutts, 59 Fla. 462, 61 So. 929; Collins v. State, 33 Fla. 429, 15 So. 214, and Camp v. First National Bank of Ocala, 44 Fla. 497, 33 So. 241. See also 7 C. J. 631.

The general rule is that every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, becomes a trustee, and is answerable to the owner of the money as for a breach of trust. In re: Interburrough Consol. Corp., 288 Fed. 334, 32 A. L. R. 932, and note; Payne v. Burnett, 269 S. W. 27, 39 A. L. R. 1125; Morse on Banks & Banking (6 Ed) Sec. 185.

Where the depositor, at the time the deposit is made, enters into an agreement with the bank, or the bank receives and accepts the deposit with instructions from the depositor that the money so deposited is for a specific purpose, and for that alone, such deposit partakes of the nature of a special deposit, being sometimes called a ''specific deposit'', and the relation between the depositor and bank with reference to such deposit is that of principal and agent. Title to the deposit remains in the depositor. Under such circumstances, therefore, the relation of debtor and creditor does not exist. Northern Sugar Corp. v. Thompson, 13 Fed. (2nd) 829; Mortin v. Willorey, 189 N. W. 232, 24 A. L. R. 1107; Sayers v. Conner (Miss.), 75 So. 131, L. R. A. 1918A 61; Ann. Cas. 1918B 388; American Bank v. Presnall, 48 Pac. 556.

If the purpose for which a special deposit was accepted by a bank cannot be accomplished, the bank is liable to the depositor for the return of the funds. American Bank v. Loretta Co., 46 N. E. 202; Mester v. Quincy Bank, 163 Ill. App. 645; Morse on Banks & Banking (6th Ed.) Sec. 208.

The general test applied to determine whether or not a claimant is entitled to preferential payment from the assets of an insolvent bank in the hands of a receiver is that it must appear that the funds in question were in the bank's possession as agent, bailee or trustee; that such funds reached the receiver's hands in some form; and that the assets brought under the receiver's control were larger by that amount than they would otherwise have been. In determining the status existing between appellant and the bank itself, the controlling element is the mutual intention and purpose of the parties with respect to the fund.

It clearly appears that the purpose and intention of the appellant in the transaction of June 8, 1926, above related, was to terminate the relation of debtor and creditor then existing between the bank and appellant and to definitely remove the funds from the general assets of the bank. It is nowhere denied that the bank, through its Executive Vice-President, knew that to be the case. We have scanned the testimony in vain for a denial by Mr. Reynolds that he knew that to be purpose and intention of appellant in delivering the check to the bank, or that he knowingly accepted it for the bank for the purpose and subject to the instructions testified to by the Bryans. Mr. Reynolds testified that he did not charge the check to appellant's account, and did not in fact segregate or earmark the money, and that he did not represent that he would do so, but nowhere does he otherwise deny the conversations with the Bryans nor that he received and accepted the check for the purpose and under the instructions definitely stated by the appellant.

The check was payable to the Bank of Coconut Grove,

and was drawn against that bank for the full amount of the account of the Bryan estate then on general deposit in that bank. When the check was delivered, the drawer had sufficient funds on deposit to cover the check, and the drawee had sufficient funds in its hands to pay the check. We bear in mind that a check is not of itself an assignment. Sec. 6928, C. G. L. 1927. That statute does not affect this situation. It is the weight of authority, in which is included States where the statute last cited— a portion of the uniform negotiable instruments law—is in effect, that when a check is presented to the drawee bank for collection, and the drawer has on deposit sufficient funds to meet the check, the drawee bank having in its possession the necessary funds to pay it, the check in contemplation of law is paid when accepted by the drawee bank. When, therefore, the bank through its officers accepted this check under the circumstances shown by the evidence, the effect of the transaction was the same as if Mrs. Bryan had received cash over the counter for the check and had thereafter returned the cash to the bank, sacked and tagged, for the sole and specific purpose of transmitting the same to New York, and with instructions so to do. The transaction amounted to a new deposit made with the bank for a specific purpose, and accepted by the bank for that sole purpose. The check was clearly marked, "To be placed on call, New York Exchange," besides which it was admittedly accompanied by specific verbal instructions to that effect, the antecedent circumstances clearly revealing to the bank the purpose and intention of appellant, in which the bank, through its officer, acquiesced. The relation of principal and agent would clearly flow from the transaction just stated, though there is some diversity of view

in the authorities regarding the effect of thereafter remitting the funds to appellant by draft, some holding that the existing relation of principal and agent continues,—others that the relation of debtor and creditor is restored. See Bank of Poplar Bluff v. Millspaugh, 281 S. W. 733, 47 A. L. R. 754, and note.

If the check had been drawn on another bank, payable to the Bank of Coconut Grove, and the latter had received the check, not for deposit to appellant's account, but for the purpose and under the circumstances already stated, and had collected the funds from the drawee bank and failed with the funds in its possession, it would clearly hold the funds as agent, not as debtor, of appellant. The fact that the Bank of Coconut Grove was both drawee and payee does not essentially alter the transaction. By appropriate action, existing deposits may be changed from general to special or specific deposits. Morse on Banks & Banking (6 Ed.) Sec. 188.

It was the bank's duty when it accepted the check under the instructions stated to immediately segregate the funds from its general assets, since by so accepting the check the bank acknowledged that it no longer owed those funds as debtor, but held the same as agent for a specific purpose. Such relationship resulted from the acceptance of the check by the bank under the instructions stated, which instructions Mr. Reynolds does not deny that he received, understood, agreed to and undertook to carry out. The bank can not accept the check of June 8, 1926, payable to itself, drawn on itself, for the full amount of appellant's deposit, with instructions to immediately remit to another bank the money represented by the check, and still claim to retain on general deposit the funds against which the check was drawn,

appellant having sufficient funds on deposit to meet the check, and the bank having sufficient funds to pay it. See 5 R. C. L. 521 (42).

The testimony does not support the view that the parties intended the previously existing relationship of debtor and creditor to continue pending ascertainment by Mr. Reynolds as to whether the New York bank would in fact accept the money on call, nor that the bank should hold the check in abeyance until that fact was ascertained. If Mr. Reynolds withheld the check for that purpose, such action was contrary to the instructions which he does not deny he received from the Bryans. The only point of difference between Mr. Reynolds and the Bryans as to this phase of the transaction is that Mr. Reynolds testified he told the Bryans he "thought" or "felt sure" he could place the money on call in New York, while the Bryans testified that Mr. Reynolds stated definitely that he could do so. But there is no evidence that the bank's acceptance of the check for the purpose stated was contingent.

The admitted instructions from the Bryans under which the check was delivered were definite and unconditional. The check was admittedly accepted subject to those instructions, and the bank assumed to execute the duty of an agent for the purpose of transmitting the funds to New York, the check being accepted by the bank as the equivalent of cash. The *creation* of the agency for the purpose of placing the money on call in New York was not contingent upon the New York bank accepting the money. The *existence* of the agency for that purpose became complete, and the former relationship of debtor and creditor was terminated with the unconditional acceptance of the check by the bank for

the purpose stated. When it was later ascertained that the New York bank would not receive the money on call, that circumstance did not *ipso facto* affect the status in which the Coconut Grove Bank then held the funds. The latter bank continued to hold the funds in its custody as the agent or bailee of appellant subject to further instructions from the principal (the appellant) as to the disposition to be made of the funds in view of that development, which instructions were later given.

The principles announced in Goodyear Tire & Rubber Co. v. Hanover Bank, 204 Pac. 992, 21 A. L. R. 677, and in Bank of Poplar Bluff v. Millspaugh, 281 S. W. 733, 47 A. L. R. 754, are largely applicable here. We observe, of course, that in the case last named the check in question was sent for collection through another bank, and that in both cases the check in question was charged to the depositor's account. See also Federal Reserve Bank v. Millspaugh, 275 S. W. 583; Federal Reserve Bank v. Peters, 123 S. E. 382, 42 A. L. R. 742.

That the check in question was not immediately charged against appellant's account does not of itself alter the nature of the transaction between the bank and appellant, nor does it relieve the bank of the duties clearly assumed by it, it being clearly shown that the bank received and *accepted* the check as the equivalent of cash and for a specific purpose. Whether or not the check was promptly entered on the bank's books is a matter of the bank's bookkeeping over which the appellant had no control.

Neglect of the officers of the bank in this respect can not prejudice the right of appellant. American Bank v. Presnall, 48 Pac. 556. It is neither shown nor intimated that appellant knew of nor acquiesced in the failure of

the bank to properly charge the check to her account. Fralick v. Cour D'Alene Bank, 210 Pac. 586.

That the funds thus held upon special or specific deposit improperly remained commingled with the general funds belonging to the bank by reason of the failure of the bank's officers to segregate the funds as it was their duty to do, does not defeat appellant's title to such funds merely because there is no way to identify the specific money. The mingling of such specific funds under those circumstances extends the trust to all the funds of the bank. Glidden v. Gutelius, 96 Fla. 834, 119 So. 140, 120 So. 1; Edwards v. Lewis, 124 So. 746.

The Receiver contends that no preference should be allowed appellant because the bank's assets coming into his hands were not increased by the transaction between the bank and appellant. That contention can not be sustained. On June 8, 1926, the Bank of Coconut Grove *owed* appellant the sum of $14,420 as a general debtor. When on that date appellant drew and delivered the check in question to the drawee bank, and the bank accepted that check as the equivalent of cash under the circumstances stated, the effect of the transaction was the same as if appellant had drawn out the money, and received manual custody of it, afterwards returning it to the bank, sacked, sealed and labeled, for transmission to New York, and not for general deposit. In contemplation of law the amount represented by the check passed. out of the hands of the bank into the hands of appellant in payment of its existing indebtedness to appellant, after which the funds were again returned to the bank for a specific purpose and in a different status, and so remained when the receiver took charge of the bank's assets. Thus the money belonging to appellant must be

regarded as having passed into the hands of the receiver, increasing by that amount the assets to be administered by him. Goodyear Tire & Rubber Co. v. Hanover Bank, *supra;* Bank of Poplar Bluff v. Millspaugh, *supra.*

Nor is the status of such fund altered by the fact that appellant, on June 26, 1926, after learning that the fund could not be disposed of as originally directed, demanded and received the New York draft hereinabove mentioned representing the fund. The fund in question was in the hands of the Bank of Coconut Grove as agent or bailee, not on general deposit. No reciprocal accounts existed between the bank and appellant. Under those circumstances, the then existing relation of principal and agent is not changed to that of debtor and creditor by the mere act of remitting to appellant the funds so held by New York Exchange. To hold otherwise would compel the owner to either require a remittance in specie, or to become a creditor of the bank in the true sense of that term, whether such relation is desired or not by the owner of the fund. While the purchaser of foreign exchange in the usual course of business is not entitled to preference over the general creditors of the drawer bank in case of its insolvency before the draft is paid by the drawee, the rule is otherwise when the money represented by the exchange or draft is held by the drawer bank as agent, bailee or trustee for the true owner. Edwards v. Lewis, 124 So. 746; Goodyear Tire & Rubber Co. v. Hanover Bank, *supra;* Bank of Poplar Bluff v. Millspaugh, *supra;* St. Louis v. Johnson, 5 Dill. 241, Federal Case No. 12235; Morse on Banks & Banking (6th Ed.) Sec. 567.

In this case, the New York draft demanded by appellant was the means selected by appellant for transmitting an existing special or specific fund to the appellant, its

owner, the fund then being in the custody of the drawer bank as agent for the owner. The draft was drawn in furtherance of the drawer bank's duties as agent. It was not drawn to settle an indebtedness of a debtor. Under those circumstances the relation of debtor and creditor was not resumed by the parties.

We entertain great respect for the views of the learned chancellor, but the evidence in this case, tested by the principles hereinabove stated, leads us to the conclusion that appellant has established her status as a preferred creditor.

The decree appealed from is therefore reversed, and the case remanded, with directions to render judgment for appellant, complainant below, giving her preference over general creditors.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND BUFORD, J.J., concur in the opinion and judgment.

---

ON REHEARING.

Division B.

Additional Headnotes on Denial of Petition for a Rehearing.

Opinion filed May 1, 1931.

1. The general rule is that trust deposits are not payable out of the general assets of the bank, unless separately and specifically traced into a separate and specific fund or asset coming into the hands of the receiver or liquidator, and that such trust funds only have preference out of the lowest cash balance in the bank at the time it closed, and general dividends for the remainder, in the absence of such tracing, which can be accomplished in many different ways.

2. Where the lowest cash balance is insufficient to pay all trust claimants against a defunct bank in full, such claimants take ratably out of the lowest cash balance with general dividends for the remainder.

Rehearing denied.

An appeal from the Circuit Court for Dade County; H. F. Atkinson, Judge.

*Walsh, Beckam, Farley & Ellis,* for Appellants;

*Burdine, Terry & Fleming,* for Appellee.

Division A.

On Petition for a Rehearing.

PER CURIAM.—The record in this case shows that the Receiver of the Bank of Coconut Grove and the appellant, both made claim to the funds of the Bank of Coconut Grove which were on deposit to the credit of the Bank of Coconut Grove with the National Bank of Commerce of New York; that after the bank of Coconut Grove closed that the fund was not immediately paid over to the Receiver but remained in the National Bank of Commerce until pursuant to a stipulation between the parties to this case, such fund was brought to Miami and placed in a special deposit in another bank, to be held in a special fund in said bank until the claim of Mrs. Bryan to priority had been determined.

The record also shows that at the time the Bank of Coconut Grove closed it had "in cash in said Bank of Coconut Grove the sum of $15,000.00 in addition to the amount to the credit of said bank in New York City". The amount of the check in question was $14,420.00 and the record shows it was drawn to the order of Mary Baird Bryan, administratrix, against funds at that time in the National Bank of Commerce of New York, and that said check was marked "paid" and the account of the drawee, Mary Baird Bryan, Administratrix, at the Bank of Coconut Grove, accordingly debited, and the draft on New York credited to said New York bank and charged accordingly upon the books of the closed bank of Coconut Grove, by such amount, before the bank closed.

The record further shows that altho the draft or check was presented and marked "paid", before payment could actually be made, notice was received by the New York bank of the closing of the bank of Coconut Grove, whereupon no payment in fact was made by the New York Bank, until pursuant to the stipulation just referred to.

There is nothing in the opinion, when construed in connection with the facts of the case, as we have held must be done when interpreting judicial opinions, which holds that this court has departed from the generally recognized rule established by its previous decisions, to the effect that trust deposits are not payable out of the general assets of the bank, unless separately and specifically traced into a separate and specific fund or asset coming into hands of the receiver or liquidator, and that such trust funds only have preference out of the lowest cash balance in the bank at the time it closed, and general dividends for the remainder, in the absence of such tracing, which can be accomplished in many different ways.

Neither has this court in its opinion in this case undertaken to over-rule or change its previously established holdings to the effect that where the lowest cash balance is insufficient to pay all trust claimants in full, that then they take ratably out of the lowest cash balance with general dividends for the remainder.

The petition for a re-hearing therefore is denied.

Buford, C.J., and Whitfield, Ellis, Terrell, Brown, and Davis, J.J., concur.