BLANCHE W. MALLETT, *Appellant*, vs. W. H. TUNNICLIFFE, as Liquidator of the State Bank of Orlando & Trust Company, of Orlando, Fla., *Appellee*.

136 So. 346.

137 So. 238.

Division B.

Opinion filed August 7, 1931.

Petition for rehearing denied October 23, 1931.

*George P. Garrett,* of Orlando, for Appellant;

*H. M. Voorhis,* of Orlando, for Appellee.

DAVIS, J.—The following are the facts upon which the decision of this appeal rests; the appellant, Mrs. Mallett, had on deposit with The State Bank of Orlando & Trust Company the sum of $13,697.14 in her savings account. On July 15, 1929, she undertook to withdraw her entire savings account from the bank, and was in the act of withdrawing the same when the Vice-President of the bank, with full authority from the bank to act in the premises, and acting for and on behalf of said bank, requested her to retain her savings deposit in the bank, and then and there represented to her that the financial condition of the bank was good, and that the savings deposit would be perfectly safe if left in the bank. The officer of the bank knew that the representations he was making were false and that the bank was insolvent. He made these representations for the purpose of persuading the depositor to rely and act thereon and she then and there did rely and act thereon. By reason of her reliance thereon, and the fact that she retained said savings acount in the bank because of said misrepresentations, said amount was still in the bank when it closed on August 5, 1929. On July 23, 1929, the depositor attempted to withdraw $8,150.00 of her savings from the bank, but the attempted withdrawal was declined because

of a rule and regulation which had been adopted by the bank requiring the depositor to give sixty days notice of her intention to withdraw her savings account before it would honor any withdrawal. Notice of this sixty-day rule had been served upon the depositor on July 20, 1929. In making her deposit, the depositor had subscribed her name to a signature card assenting to the rules of the bank governing savings deposits and expressing her willingness to be bound thereby as a part of her savings deposit agreement.

The point to be decided is whether or not the successful persuasion of the depositor by the bank officer not to withdraw her funds on July 15, 1929, was the equivalent of a new deposit of such funds as of that date which would entitle the depositor to a preference on the theory that for a bank to induce one to make a deposit by false representations of solvency is a fraud creating a trust which results in a preferred claim on the part of the defrauded depositor. Secondary to this, is the question of how far the preferred claim can be asserted and against what funds or assets of the insolvent bank in the event that it is sustained as a preference.

The appeal here is from an order sustaining a general demurrer to a bill of complaint filed against the Liquidator seeking to impress a trust for the entire deposit of $13,-697.14 against all the assets of the insolvent bank.

At the outset, it may be stated that the facts in the case are sufficient to bring it within the rule laid down in Hinson v. Drummond, 98 Fla. 502, 123 So. 913, wherein Mr. Justice Buford stated the rule to be: "The president and director of bank, who represent to depositor that bank was in sound condition and solvent, and thereby persuades depositor to leave money on deposit, were liable to depositor, where bank was insolvent and depositor lost deposit, since, if president had no actual knowledge of condition of bank, his situation was such that it was his duty to know the

truth or falsity of representations, and such party is in law guilty of fraud as much as if he had actual knowledge.''

It thus appears that in so far as the particular wrong done the appellant by reason of the fraud and deceit practiced upon her is concerned that appellant has a plain, complete and adequate remedy at law for the recovery of damages for the tort committed against her by the particular officer who made the false representations and others who became tortiously liable with him therefor. It may likewise be said that the bank itself as a corporation became liable in damages for the tort committed by its officer in perpetrating the fraud and deceit referred to and that in an appropriate action at law for damages a judgment could be recovered not only against the officer or officers involved, but against the bank itself as a corporation by reason of such fraud and deceit.

But appellant insists that her rights go further than this, and that by reason of the circumstances, she is entitled to assert and have allowed as a preference against the entire assets of the insolvent bank, to the prejudice of other depositors who did not participate in the fraud and deceit, a claim for her entire deposit, together with interest thereon. A sufficient answer to this contention will be found in the case of State v. Banking Corporations, 251 Pac. (Mont.) 151, where the court said: ''It would be a strange doctrine that would permit a creditor to impress his debtor's property with a trust simply because, when a creditor attempted to collect the debt, the debtor falsely represented his ability to pay and thereby obtained forbearance.'' In another case, that of Veneer v. Cox, 35 S. W. 769, the Court of Chancery Appeals of Tennessee had under review a case where a depositor was induced to leave his deposit in an insolvent bank by the false and fraudulent representation of its President to the effect that the bank was solvent and the deposit was safe. It was held that the depositor sustained the relation of debtor and creditor to each other in deny-

ing a claim for preference asserted by the depositor because of the false representations which had been made, the Court said: "But this case is one simply of creditor and debtor, wherein the debtor, by a series of egregious lies as to his solvency and his ability to pay his debts, induces his creditor to forbear pressing the payment of his demand and to continue his relationship as creditor. If such misrepresentations operate in equity to divest title to property, and to convert debtors into trustees for their creditors, we apprehend that the field of trust estates will be immensely enlarged." See also 7 C. J. 732; 1 Miche on Banks & Banking, 594, note 1.

In the case at bar it appears that the depositor voluntarily and knowingly continued her relationship as a general depositor, or in other words, as a general creditor of the bank. The fact that she did so through the fraud and deceit of an officer of the bank in inducing her not to change her relationship does not of itself convert the relationship from that of debtor and creditor to one of trustee and *cestui que* trust. It undoubtedly gives rise to an action in favor of the deceived depositor, as we have pointed out, but the title to the deposit remains the same as it was before the fraud and deceit were practiced. In this respect the situation differs from that wherein a trust is held to be created, where an insolvent bank induces one to make a deposit by false representations of solvency, thereby perpetrating a fraud upon the depositor which entitles the depositor by reason of such fraud to rescind the agreement of deposit by which the relation of debtor and creditor would be created. See Richardson v. New Orleans Debenture Redemption Co., 102 Fed. 780, 42 C. C. A. 619; 52 L. R. A. 67; 3 R. C. L. 557, and cases cited. In the last mentioned instances, the trust results because of the exercise of the depositor's right of rescission which prevents the title to the deposit from ever vesting in the insolvent bank by reason of the fraud and in consequence the de-

positor, after having rescinded the deposit because of the fraud, is entitled to trace the deposit and assert a preferred claim against any part of the assets of the insolvent bank with which such deposit may have been commingled.

In this case the facts do not bring it within the rule laid down in Bryan v. Coconut Grove Bank & Trust Co., 101 Fla. 947; 132 So. 481, because it is nowhere shown that the depositor ever did more than appear at the bank with the intention of withdrawing her deposit; it is nowhere alleged or shown that the attempted withdrawal proceeded to the point of presentation and acceptance of a check on the bank accompanied by the pass book which was the agreed way in which the deposit was required to be withdrawn, according to the allegations of the pleadings in this case. There was therefore no segregation of the deposit, in fact or in contemplation of law, such as was shown to be the case in Bryan v. Coconut Grove Bank & Trust Co., *supra*. The mere intention and desire of the appellant to withdraw her deposit and thereby discontinue her status as a creditor of the bank, but which was never carried to the point of performance of any of the overt acts required to give it effect as a withdrawal, cannot be viewed as being a withdrawal and redeposit in contemplation of law as contended for by the appellant.

As to the attempted withdrawal of the sum of $8,150.00 on July 23, 1929, which was declined by the Cashier of the bank because the appellant had not given sixty days notice of her intention to withdraw her savings account, the situation is different. Whether or not the appellant was entitled to withdraw her deposit of $8,150.00 as of that date under the circumstances under which she demanded it then depends the validity of the rule and regulation which had been adopted by the bank requiring sixty days notice to be given of intention to withdraw savings accounts. The bill of complaint alleges that such rule and regulation was never validly adopted and was without force and ef-

fect as a ground for the bank's refusal to honor the complainant's check. At the time the check is alleged to have been presented, the bank was open for business and was presumably solvent and it was the duty of the bank to honor proper orders drawn upon it for the withdrawal of funds unless by reason of contract to the contrary it had a valid right to refuse to pay its savings depositors on demand. While we recognize the rule that the mere drawing of a check does not operate as an assignment of the fund on deposit in the bank until the check is accepted by the bank, yet it may be logically deduced from the allegations of the bill in this case that the check was accepted for the $8,150.00 for which it was drawn and thereby the fund assigned prior to the closing of the bank to be paid after the lapse of sixty days from the time the check was drawn. The legal effect of this operation was to convert $8,150.00 of the total deposit of the appellant into a special deposit amounting to a segregation of the funds in the bank to be paid to her forthwith or at the end of sixty days, depending upon whether or not the sixty-day rule and regulation was insisted upon. In either event, such special deposit augmented the cash reserve found in the bank at the time it closed and to that extent the same was entitled to be allowed as a preference against such cash reserve fund under the circumstances and to the extent such perferences were held to be allowable in the case of Meyers v. Federal Reserve Bank, 134 So. 600.

The demurrer which the court below sustained was a general demurrer to the entire bill and since there was equity in the bill concerning the claim of preference with reference to the $8,150.00 hereinfore referred to, it was error for the court to sustain the general demurrer. The decree is accordingly reversed and the cause remanded, with directions to overrule the general demurrer and for further proceedings in accordance with the opinion.

BUFORD, C.J., AND WHITFIELD AND TERRELL, J.J., concur.
ELLIS AND BROWN, J.J., dissent.

ELLIS, J., dissents:—The phrase "she undertook to withdraw her entire savings account from the bank and was in the act of withdrawing the same," as used in the opinion and alleged in the bill, must be interpreted in the light of the rules and regulations imposed by the bank governing savings accounts and which were printed in the savings account book. When Mrs. Mallett therefore undertook to withdraw her entire savings account the bank was open for paying checks, she presented to the proper officer or employee of the bank her check for the amount she desired to be paid to her and at the time produced her pass book or savings account book, that she had a right to control the deposits made by her in the Savings Department and "was in the act of withdrawing" the deposit when the deception of the bank official, constituting the fraud in the case, was perpetrated upon her. There was no denial of the validity of her check, nor of the bank's duty to immediately honor it. In fact the circumstances in which the deception was perpetrated constituted an acceptance by the bank of the written demand for the money as evidenced by the check and pass book, even if there was not an actual placing of the legal tender upon the window ledge in front of and under the hands of Mrs. Mallett. The check was accepted and in law the relation of debtor and creditor ceased.

If there had been a bank robbery at that time and the money swept into the bag of the brigand, Mrs. Mallett would have been the loser so far as the bank was concerned. Her cause of action would have been against the thief who with force and through intimidation and fear took her money. But it was as effectually taken from her by the deceit and fraud of one who, though not armed with a pistol or deadly weapon, just as effectually swept the money from the possession of Mrs. Mallett into the vaults

of the institution which by fraud, deceit and abuse of confidence took it from her.

In these circumstances to speak of continuing the relation of debtor and creditor is mere "learned talk" in which substance is sacrificed to form and dishonesty and fraud prevails over innocence, right and justice. The relation of creditor and debtor ceased when Mrs. Mallett presented her check accompanied by the pass-book to the proper employee or officer at the proper place and was employed in the act of withdrawing her money. Then up comes the person with evil and vicious purpose, in this case, according to the statement of facts, a bank official with fraudulent and deceitful words and promises and not a robber with a pistol and takes in the name of the bank Mrs. Mallett's money back into the possession of the bank.

I am of the opinion that in such circumstances the transaction did not renew an old but established a new relation between Mrs. Mallett and the bank in which the latter became a trustee of the money which Mrs. Mallett allowed it to take again into its possession under the influence of the deceit which it practiced upon her.

The order sustaining a demurrer to the bill was erroneous on that phase of the case, as well as it involved the $8150.00 which the bank afterwards refused to pay on Mrs. Mallett's check.

BROWN, J., (Concurring specially in the dissenting opinion of Mr. Justice Ellis) :—I think the facts alleged placed Mrs. Mallett in the same position that she would have occupied if, on July 15, 1929, she had actually withdrawn the $13,647.14 and redeposited it on that date upon the express representations made by the officer of the bank. When an officer of a bank, knowing it to be insolvent, expressly represents to a depositor that the bank is in good financial condition and that the deposit will be perfectly safe, and thereby induces the making of a new deposit, or the continuation of a deposit which would otherwise have

been withdrawn, the bank becomes the trustee ex maleficio of such funds, entitling the depositor to a preference. See 39 Cyc. 172, et seq.

## ON REHEARING.

### Petition filed August 28, 1931—Denied.

DAVIS, J.—By an opinion filed in this cause on August 7th, 1931, the decree of the Court below was reversed, and the cause remanded with directions to over-rule the appellee's general demurrer to the bill, and for further proceedings in accordance with the opinion filed by the writer, which expressed the views of a majority of the Court.

In that opinion a majority of this Court held that the attempted withdrawal of the sum of $8150.00, on July 23, 1929, which was declined by the cashier of the State Bank of Orlando & Trust Company, because of the fact that the appellant-depositor had not given the bank sixty days notice of her intention to withdraw her savings account, as required by the bank's rules and regulations, done at a time when the bank was open for business and presumptively solvent, in contemplation of law converted the sum attempted to be thus withdrawn, into a special deposit for which a preferred claim might be allowed, if the allegations of the bill with regard to this item, should be sustained by the proof.

The correctness of this holding is questioned by the appellee's petition for a rehearing. In view of the public importance of the questions raised, and the effect of our holding on the rights of depositors in banks under similar circumstances, we deem some further discussion of the reason for our holding to be appropriate.

In this connection, it is not amiss to call attention at the outset to the fact that this is not a case where a bank depositor has merely given notice of an intention to withdraw his deposit in the future, but has neither made nor insisted upon a withdrawal *in praesenti*. In this case, ac-

cording to the allegations of the bill of complaint, the appellant had done all within her power and all that she was required to do, on July 23, 1929, in order to make a withdrawal of the sum of $8150.00 here dealt with. The bank, and the bank alone over appellant's protest, prevented the actual removal of the money from the bank's vaults by insisting that such money remain in its vaults until the sixty-day notice of withdrawal rule had been complied with. Had the depositor not insisted upon her right to make a present termination of her relations with the bank, subject to the operation of the sixty-day rule as to acquiring her money, the situation here and the resultant ruling might have been different. This is not a case where *notice only* has been given of an intention to withdraw as a depositor. Here the depositor gave no notice but presented her demand and asked for her money, the bank refusing to make a present delivery over of such money to her, but postponing such delivery to a future date under authority of the sixty-day rule.

This Court did not overlook the fact that Blanche W. Mallett did not present her pass book with her request for withdrawal. The bank did not base its refusal to *deliver* the money to Mrs. Mallett on the ground that the pass book was not presented with her request for withdrawal.

The refusal to permit the depositor's withdrawal of her deposit was on the contrary expressly grounded by the bank on its special rule that required sixty days notice of such withdrawals before immediate payment could be *realized,*—not before payment in fact would be made.

The rule as to the presentation of the bank book was one that could be waived. We hold that it *was* waived in this case when the bank refused Mrs. Mallett's requisition for withdrawal of her deposit, not on that ground, but on the ground that sixty days notice had not been given by her. See Page on Contracts, Vol. 5, page 5076.

The account involved in this case was a savings deposit.

While a check was used as a medium for the withdrawal of this deposit, such check was not employed as an ordinary check but was in legal effect the evidence of a written demand made by the depositor directly on the bank for her deposit to that extent. This demand was within her legal right to insist upon,—the bank being at the time open for business and being under compulsion of law as well as by its own agreement required to honor its depositor's request for withdrawal of her deposited funds.

The bank by basing its refusal to deliver over the money represented by the requisition on other grounds, in effect acknowledged the rightfulness of the withdrawal and that the title to that much money should *eo instanti* pass to the depositor. Only delivery of the money was postponed until after the lapse of the sixty days provided for by the rule of the bank.

The depositor was in no sense in the same situation as the holder of a certified check. Her desire to terminate the bank's relation as her creditor was expressed in her offer and demand to withdraw her deposit.

This offer was accepted by the bank which in effect informed the depositor that it acquiesced in her withdrawal as of that date, but desired the privilege of retaining her money on hand in the vaults of the bank for sixty days longer, not for the depositor's convenience, but for the bank's convenience, not with her consent, but against her will at that time.

So long as the bank remains open for business under the laws of this State a depositor has the legal right to *demand* the immediate termination of his relation as a creditor of the bank at any time.

This such depositor may legally accomplish by presenting his requisition in proper form to the bank, accompanied by whatever evidence the bank may require to satisfy itself as to the identity of the depositor, such as presentation of

his bank book or the like, when insisted on by that institution.

When such demand is once made in legal form, the bank cannot, if open for business and therefore presumptively solvent, without the consent or acquiescence of such depositor, prolong the relationship of creditor and debtor. No bank can lawfully remain open for transaction of a banking business, and refuse to permit withdrawal of its ordinary general deposits, although it may, pursuant to lawful rules and regulations adopted by it as authorized by law or contract, postpone for a reasonable time the *consummation* of this termination of the creditor's relation so far as the mere *delivery* to him of the depositor's funds is concerned.

The demand for withdrawal of the $8,150.00 involved in this case was, according to the allegations of the bill, made on July 23, 1929. The bill does not show any consent or acquiescence at that time on Mrs. Mallett's part to continue the relationship of debtor and creditor with the bank subsequent to that date. So it must necessarily be regarded that on that date the relationship of debtor and creditor previously existing was terminated and some other relationship substituted.

What was this substituted relationship?

Nothing more or less than a trust relationship under which the bank, as trustee, continued to hold the sum of $8,150.00 (the title to which had passed on July 23, 1929, to Mrs. Mallett) for a further period of sixty days in order that the cash assets required to be kept on hand might not be removed from the vaults of the bank until other funds to take their place had been realized by the bank through the liquidation of its securities sufficient to replace the $8,150.00 which had ceased to belong to the bank the instant the relationship of the depositor had ended.

The sixty-day rule was adopted by the bank against the will of the depositor, although it may have been within

the permissible scope of the deposit agreement to such extent as to be within the lawful power of the bank to make and to bind the depositor to yield to it after its adoption.

But such sixty-day rule did not operate to prolong the *relationship* of the depositor as that of debtor and creditor, after the depositor had lawfully and in fact terminated such relationship. The right to adopt and the adoption of the "sixty-day rule" was intended to harmonize,—not conflict with, the depositor's right of immediate withdrawal of deposits, as embraced in her agreement with the bank when the deposit was made and as contemplated by the laws of this State governing banking.

Construing both rights together, we are forced to the conclusion that where a bank, for its own convenience, invokes the privilege of requiring its ordinary general depositors in savings accounts to give sixty days notice of intention to withdraw savings accounts from such bank, and adopts such a rule for its own convenience without the consent of its depositors, although within its contractual and legal rights as against such depositor to enforce, the relationship of a depositor attempting to withdraw his deposit immediately without giving the required notice, terminates *eo instanti* upon performance of all acts necessary on the depositor's part to terminate his account with the bank, and while the bank may have the right thereafter to refuse to pay over the cash represented by the withdrawn deposit until the notice period has expired, its relationship during such period and prior to the actual delivery over to depositor of the money withdrawn, is that of trustee, the title to the fund withdrawn having passed to the depositor immediately upon his completed act of withdrawal from the bank in the first instance.

The mutuality of agreement between the bank and its depositor which is necessary under the above stated rule to convert the relationship from that of a general depositor to that of a special depositor is found in the nature of the

depositor's agreement with the bank, which is consented to by the bank in its acceptance of deposits, namely, that depositors shall have the right *at all times* to withdraw their deposits and thereby terminate the relationship of creditor of the bank on demand. The demand having been made and acknowledged by the bank, the previous relation is in contemplation of law necessarily ended, giving rise to a succeeding relationship in which title to the deposit becomes vested in the depositor, the bank holding the fund as trustee.

The application of the foregoing rule to the instant case brings it well within the rule referred to in appellee's petition for re-hearing, which has been so aptly stated by Mr. Chief Justice Buford in Amos v. Tinsley, 135 So. 397, 102 Fla. 1, as follows:

"The general text applied to determine whether or not a claimaint is entitled to preferential payment from the assets of an insolvent bank in the hands of a receiver is that it must appear that the funds in question were in the Bank's possession as agent, bailee *or trustee;* that such funds reached the receiver's hands in some form; and that the assets brought under the receiver's control were larger by that amount than they would otherwise have been. In determining the status existing between appellant and the bank itself, the controlling element is the mutual intention and purpose of the parties with respect to the fund." (Italics ours).

The bank being a trustee for the depositor with reference the $8,150.00 hereinbefore referred to, there was equity in the bill concerning this item. Nothing, however, in this opinion or in the original opinion is to be construed as precluding the joinder of issue on the facts and inferences from facts alleged in the bill, that being a matter of proof.

We simply hold the bill and facts alleged there as being sufficient to state a ground for equitable relief. If any matters of defense, affirmative or otherwise, exist, they should be asserted by appropriate answer upon remand of the cause.

Rehearing denied.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., concurs in the opinion and judgment.

ELLIS AND BROWN, J.J., concur in the conclusion.