## THOMPSON v. BEITIA.
### No. 7242.

Circuit Court of Appeals, Ninth Circuit.
Feb. 26, 1934.

Frank L. Stephan and J. H. Blandford, both of Twin Falls, Idaho, for appellant.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellee brought this suit to obtain a preference to the assets of the Twin Falls National Bank, of Twin Falls, Idaho, and from a decree granting a preference as prayed, the receiver appeals.

The record discloses that some time prior to July 21, 1931, appellee forwarded to one J. A. Keefer, who was then the cashier of the said Twin Falls Bank, a certain diamond ring, with authority and instructions to Keefer to sell the ring for not less than $1,000 and to retain therefrom his necessary selling expenses and a commission of $50, and, according to the allegations of the complaint and the findings of the court, Keefer was instructed to transmit the balance due appellee to the Walker Bank & Trust Company, of Salt Lake City, Utah, for deposit. Keefer sold the ring for $1,000 to one A. R. Scott, who had an account in the Twin Falls Bank, and who paid for the ring with a check drawn on that account, payable to the bank. Keefer deposited the sum of $994.50, representing the proceeds of the sale less selling expenses, to the credit of appellee in the Twin Falls Bank in an account which he opened in appellee's name on August 15, 1931, and so informed appellee by letter of August 22, 1931. At that time appellee did not have an account with the Twin Falls Bank, but he had previously, from 1919 to 1929, carried an account with that bank.

On August 26, 1931, appellee caused his daughter to send the Walker Bank a check drawn on the Twin Falls Bank for the sum of $994.50, signed "Manuel Beitia, by Mary Beitia," the purpose being to transfer said sum to appellee's account in the Walker Bank, but the Twin Falls Bank refused to honor the check on the ground that the signature thereto was not authorized.

Thereupon, on September 2, 1931, appellee personally signed a check drawn on the Twin Falls Bank for the same sum, payable to his wife, who duly indorsed the check and sent it to the Walker Bank for deposit. However, the Twin Falls Bank refused to honor the check and on September 8, 1931, caused same to be protested on the ground that the signature thereto was irregular.

On September 16, 1931, the Twin Falls Bank sent to appellee's wife two checks prepared for signature by appellee, one in the sum of $50 payable to Keefer as his commission for the sale of the ring, and the other in the sum of $994.50, representing the balance due to appellee, together with the following letter:

"We have your letter authorizing you to draw checks on the account of Mr. Manuel Beitia and are enclosing herewith one check payable to us for the transfer of $994.50 to Walker Brothers Bank, Salt Lake. Please let us know who you want this money deposited to in the Salt Lake Bank so that we can advise them. Also a check for $50.00 payable to J. A. Keefer. As soon as these checks are received we will make the necessary transfer. Please sign both checks."

Meantime, on September 9th, appellee had authorized his daughter to sign for him checks drawn on his account in the Twin Falls Bank and had so notified the bank, and, according to the testimony, the two aforementioned checks, forwarded by the bank, were signed by appellee's daughter and she sent them to the bank as instructed, but there is no testimony tending to show that the checks were accompanied by a letter giving the bank the information or instructions as requested in the letter of September 16th, quoted above.

The $50 check was cashed and charged to appellee's account. However, the $944.50 check was not cashed by the Twin Falls Bank and it is stipulated that it was not received by the Walker Bank at Salt Lake City, and, according to the testimony, this check could not be found among the records and files of the Twin Falls Bank after it had ceased doing business. The court found that said sum remained on deposit in the Twin Falls Bank to the credit of appellee and passed into the hands of the receiver, thereby augmenting the assets of the bank to that extent.

The bank failed in November, 1931, and in October, 1932, the receiver thereof denied appellee's claim that a trust existed in his favor for the sum of $944.50 and that he was entitled to recover said sum as a preferred claim. Appellee thereupon brought this suit against the receiver and, as above stated, was awarded a preferred claim by decree of the trial court. The receiver contends here that the bank did not hold said sum of $944.50 as trustee for appellee and that the court therefore erred in allowing appellee a preferred claim for that sum.

Among others, the court made the following findings of fact:

"That the said J. A. Keefer had no power or authority to deposit the proceeds of the sale of said ring in said Twin Falls National Bank and that said sum was wrongfully held by said bank contrary to the instructions of the plaintiff from July 21, until the date of the closing of said bank, and that had it not been for the wrongful and tortious acts of the officers of said bank, the said sum in accordance with plaintiff's demand would have been transmitted to the Walker Bank & Trust Company, of Salt Lake City, Utah."

"That the said J. A. Keefer, at that time cashier of the Twin Falls National Bank, received the ring described in the pleadings with specific instructions to sell the same and transmit the money directly to plaintiff's account in the Walker Bank & Trust Company, of Salt Lake City, Utah, and that the deposit of the proceeds of the sale of said ring in the Twin Falls National Bank was made without the knowledge, consent, or authority of the plaintiff, and that the said J. A. Keefer had no authority to dispose of money received from said ring other than to remit the same to the plaintiff or the Walker Bank & Trust Company, of Salt Lake City, Utah."

The conclusions of law made by the court are as follows:

"That at the time the alleged deposit was entered upon the books of the Twin Falls National Bank such act was unauthorized by the plaintiff and was performed by one of the officers of the bank who was in his private capacity acting as agent of the plaintiff, and that the Twin Falls National Bank had actual knowledge that such deposit was unauthorized; that by reason of the facts aforesaid the relation of banker and depositor was not created between plaintiff and the defendant, but on the other hand said sum was wrongfully and tortiously held."

"That by means of the facts aforesaid the Twin Falls National Bank became and was a trustee in possession of the funds of the plaintiff, charged with the disposal thereof in a specific manner, and that at such time there was in the vaults of the Twin Falls National Bank a sum of actual money exceeding the sum of $994.50."

"That by plaintiff's efforts to obtain said money and by reason of his demand for the payment thereof, which payment was wrongfully refused by the Twin Falls National Bank, a trust relationship was established in and to $944.50 of the cash then in the vaults of the Twin Falls National Bank, and the said Twin Falls National Bank became the trustee of the plaintiff holding $944.50 in cash which it should have transferred upon demand of the plaintiff."

"That the said sum of $944.50 passed into the hands of the receiver and augmented the assets of said bank to that extent, and the plaintiff is entitled to a judgment of preference as prayed in its complaint."

■■ Appellee's cause of action, as set forth in the complaint, is based chiefly, if not altogether, upon the theory that the cashier of the bank was authorized and instructed by appellee to sell the ring for $1,000 and retain therefrom his expenses and commission and transfer the balance directly to the Walker Bank at Salt Lake for deposit in appellee's savings account in the latter institution. In paragraph 3 of the complaint it is alleged "that immediately prior to August 15, 1931, this plaintiff forwarded to the cashier of said Twin Falls National Bank a certain diamond ring, with authority and instructions for said cashier to sell the same for a sum not less than $1,000, to retain therefrom his necessary expenses and a sales charge of $50, and transmit the balance directly to the Walker Bank & Trust Company, at Salt Lake City, Utah, for deposit in the plaintiff's savings account in the latter institution, which savings account was in the name of plaintiff's wife, Fernanda Beitia." And in paragraph 9 thereof it is alleged "that such sum was so deposited to his account in the Twin Falls National Bank contrary to his instructions." That the court proceeded upon the same theory is shown by the findings of fact, which findings of fact are in the identical language of the complaint, quoted above. These findings are wholly unsupported by the evidence, and must have been signed by the trial court through inadvertence. It follows therefore that the conclusions of law, to the effect that "the relation of banker and depositor [debtor and creditor] was not created between plaintiff and the defendant," and the conclusion that "the Twin Falls National Bank became and was a trustee in possession of the funds of the plaintiff, charged with the disposal thereof in a specific manner," are erroneous. The funds were deposited in a bank where appellee had previously carried an account and the deposit was made by appellee's agent, Keefer, who happened to be at the time the cashier of the bank, and appellee was duly advised of the deposit, as stated above. Appellee made no objection to the deposit of the funds, but, on the contrary, treated it as a general deposit.

"* * * A deposit made in the ordinary course of business is presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as to constitute it a special deposit or a deposit for a specific purpose, as distinguished from a general deposit." Northern Sugar Corporation v. Thompson (C. C. A. 8) 13 F.(2d) 829, 831, and cases there cited.

"Whether a deposit in a bank is general or special depends upon the mutual understanding and intention of the parties at the time such deposit is made, and a deposit made in the ordinary course of business is presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit." Keyes v. Paducah & I. R. Co. (C. C. A. 6) 61 F.(2d) 611, 613, 86 A. L. R. 203.

See, also, In re Interborough Consolidated Corporation (C. C. A.) 288 F. 334, 347, 32 A. L. R. 932.

In the instant case there was no evidence of any agreement, express or implied, that the funds in question were to be treated by the bank in any way different from a general deposit, or that they were to be applied to a particular purpose, and in his brief appellee makes the following admission in this respect: "The pleadings and findings refer to instructions sent to the Twin Falls Bank when the ring was sent over, requiring the proceeds of the ring sale to be transmitted to the appellee's account in the Salt Lake Bank [but] it is doubtful if the evidence supports this allegation and finding, except in an indirect manner." Nor does the record contain any evidence that the deposit made by Keefer to the credit of appellee in the Twin Falls Bank was unauthorized. It must therefore be assumed that the relationship of banker and depositor or debtor and creditor, lawfully existed between the Twin Falls Bank and the appellee. In fact, appellee concedes "that the proceeds of this sale were deposited to appellee's credit in the Twin Falls National Bank, and that thereby the relationship of debtor and creditor was created between the bank and appellee."

■ Appellee contends, however, that the refusal of the bank to honor the second check (dated September 2d) terminated the relationship of debtor and creditor and created a trust relationship in lieu thereof. Inasmuch as the signature to the first check was admittedly unauthorized, and inasmuch as there is no proof that the bank ever received any instructions regarding the disposition of the funds as requested in the letter of September 16th relative to the third check, appellee's contention must necessarily be based on the

second check, and the appellee admits as much in his brief, as follows:

"Regardless of the view one may take of the first and third checks, it is certain from the evidence, and the trial court has already found, that the check of September 2, 1931, was absolutely regular and presented in the usual manner, and that it was dishonored by the Twin Falls Bank wrongfully and without cause. From this it can be stated without fear of denial that more than two months before the Twin Falls Bank closed the appellee made demand in due course and regular manner for the withdrawal of this sum of $944.50. It is appellee's position at this time, and has been his position consistently, that this demand, if not the other demands also, as a matter of law, terminated any relationship of debtor and creditor that might have been existing theretofore and ipso facto created a trust relationship in lieu thereof."

We may state here, parenthetically, that for all that appears in the record the signature to the second check was in fact irregular and the bank was therefore justified in dishonoring it. In other words, no proof was offered that the signature to this check was in accordance with the regular and genuine signature of appellee on file with the bank. However, we need not dwell upon this point and we will not base our decision solely thereon, for we are of opinion that, in any event, the bank did not, by dishonoring this check, become a trustee for the amount thereof in favor of appellee.

Appellee's contention with reference to the second check is based upon the case of Mallett v. Tunnicliffe, 102 Fla. 809, 136 So. 346, 347, 137 So. 238, 240, 80 A. L. R. 785, which case, as appellee admits, "seems to stand alone." "At any rate, appellee's counsel are unable to discover that this question has been considered by any other court." We have carefully examined the Florida case, supra, and in our opinion it does not support appellee's position. The facts are vastly different from the facts in the instant case. In that case the court said:

"The following are the facts upon which the decision of this appeal rests: The appellant, Mrs. Mallett, had on deposit with the State Bank of Orlando & Trust Company the sum of $13,697.14 in her savings account. On July 15, 1929, she undertook to withdraw her entire savings account from the bank, and was in the act of withdrawing the same when the vice president of the bank, with full authority from the bank to act in the premises, and acting for and on behalf of said bank, requested her to retain her savings deposit in the bank, and then and there represented to her that the financial condition of the bank was good, and that the savings deposit would be perfectly safe if left in the bank. The officer of the bank knew that the representations he was making were false and that the bank was insolvent. He made these representations for the purpose of persuading the depositor to rely and act thereon, and she then and there did rely and act thereon. By reason of her reliance thereon, and the fact that she retained said savings account in the bank because of said misrepresentations, said amount was still in the bank when it closed on August 5, 1929. On July 23, 1929, the depositor attempted to withdraw $8,150 of her savings from the bank, but the attempted withdrawal was declined because of a rule and regulation which had been adopted by the bank requiring the depositor to give sixty days' notice of her intention to withdraw her savings account before it would honor any withdrawal. Notice of this sixty-day rule had been served upon the depositor on July 20, 1929. In making her deposit, the depositor had subscribed her name to a signature card assenting to the rules of the bank governing savings deposits and expressing her willingness to be bound thereby as a part of her savings deposit agreement.

"The point to be decided is whether or not the successful persuasion of the depositor by the bank officer not to withdraw her funds on July 15, 1929, was the equivalent of a new deposit of such funds as of that date which would entitle the depositor to a preference on the theory that for a bank to induce one to make a deposit by false representations of solvency is a fraud creating a trust which results in a preferred claim on the part of the defrauded depositor. Secondary to this, is the question of how far the preferred claim can be asserted and against what funds or assets of the insolvent bank in the event that it is sustained as a preference.

"The appeal here is from an order sustaining a general demurrer to a bill of complaint filed against the liquidator seeking to impress a trust for the entire deposit of $13,-697.14 against all the assets of the insolvent bank."

The court held that the depositor had a complete and adequate remedy at law against both the officer of the bank and the bank itself for the tort committed by said officer in perpetrating the fraud and deceit referred to, but the fact that the depositor continued her relationship as a general depositor

through the fraud and deceit of an officer of the bank did not of itself entitle her to a preference to the entire assets of the insolvent bank to the prejudice of the other depositors.

"It is nowhere alleged or shown," said the court, "that the attempted withdrawal proceeded to the point of presentation and *acceptance* of a check on the bank accompanied by the passbook which was the agreed way in which the deposit was required to be withdrawn, according to the allegations of the pleadings in this case. There was therefore no segregation of the deposit, in fact or in contemplation of law, such as was shown to be the case in Bryan v. Coconut Grove Bank & Trust Co. [101 Fla. 947, 132 So. 481, 134 So. 229], supra. The mere intention and desire of the appellant to withdraw her deposit and thereby discontinue her status as a creditor of the bank, but which was never carried to the point of performance of any of the overt acts required to give it effect as a withdrawal, cannot be viewed as being a withdrawal and redeposit in contemplation of law as contended for by the appellant."

The court further said:

"As to the attempted withdrawal of the sum of $8,150 on July 23, 1929, which was declined by the Cashier of the bank because the appellant had not given sixty days' notice of her intention to withdraw her savings account, the situation is different. * * * At the time the check is alleged to have been presented, the bank was open for business and was presumably solvent, and it was the duty of the bank to honor proper orders drawn upon it for the withdrawal of funds unless by reason of contract to the contrary it had a valid right to refuse to pay its savings depositors on demand. *While we recognize the rule that the mere drawing of a check does not operate as an assignment of the fund on deposit in the bank until the check is accepted by the bank*, yet it may be logically deduced from the allegations of the bill in this case that the check was accepted for the $8,150 for which it was drawn, and thereby the fund assigned prior to the closing of the bank to be paid after the lapse of sixty days from the time the check was drawn. The legal effect of this operation was to convert $8,150 of the total deposit of the appellant into a special deposit amounting to a segregation of the funds in the bank to be paid to her forthwith or at the end of sixty days, depending upon whether or not the sixty-day rule and regulation was insisted upon." (Italics our own.)

The court held that the order of the trial court sustaining the general demurrer to the entire bill was error since there was equity in the bill concerning the claim of preference with reference to the $8,150.

In the court's opinion on rehearing, the court again pointed out that the account involved was a savings deposit, and that while the check was used as a medium for the withdrawal of the deposit, "such check was not employed as an ordinary check"; and further that the depositor's offer and demand to withdraw her deposit *"was accepted by the bank,* which in effect informed the depositor that it acquiesced in her withdrawal as of that date, but desired the privilege of retaining her money on hand in the vaults of the bank for sixty days longer, not for the depositor's convenience, but for the bank's convenience, not with her consent, but against her will at that time."

In the instant case, when the second check, which was payable to appellee's wife, reached the Twin Falls Bank it was not only not accepted by the latter but payment thereof was refused upon the ground as stated above, and on the back thereof there appear the words "Signature irregular."

We are of opinion that the failure of the bank to honor the check under the circumstances was insufficient in fact or in contemplation of law to terminate the relationship of debtor and creditor and substitute therefor the relationship of trustee and cestui que trust, thereby giving appellee a preferential right to payment in full out of the assets of the bank to the detriment of the other depositors and creditors.

Reversed.