The People of the State of Illinois ex rel. Oscar Nelson,
Auditor of Public Accounts, v. Bryn Mawr State
Bank.
In re Claim of Harry A. Walker, Appellee, v. Irwin T.
Gilruth, Receiver of Bryn Mawr State Bank, Appellant.

Gen. No. 36,360.

WILSON, J., dissenting.

Opinion filed February 7, 1934. Rehearing denied February 26, 1934.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellant;
ADRIAN L. HOOVER, DUDLEY F. JESSOPP and JOSEPH B.
DUGGAN, of counsel.

F. E. BRIGHTMAN and EDWARD D. FEINBERG, for appellee; EDWARD D. FEINBERG, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion
of the court.

This is an appeal from an order of the superior
court of Cook county entered June 28, 1932, directing

Irwin T. Gilruth, receiver of the Bryn Mawr State Bank, to pay Harry A. Walker the sum of $2,235.01 as and for a preferred claim to be paid out of the receivership estate of said bank.

The claim of Walker was filed with the receiver on August 19, 1931, and recites in substance that on the morning of Tuesday, June 9, 1931, Walker made a deposit in the Bryn Mawr State Bank, which was received and accepted by one Schneider, a paying and receiving teller of this bank; that he, Walker, then asked Schneider what his, Walker's, checking balance was with the bank; that after referring to the books, Schneider informed Walker that his balance was $2,255.54, and that thereupon Walker drew a check on the bank for that amount, presented it to Schneider and demanded its payment, and that Schneider then informed Walker that the check must be "O.K'd." by an officer of the bank; that thereupon Walker presented the check to one Hennessy, the assistant cashier of the bank, and that "Hennessy endorsed his approval for payment thereon," and that Walker again presented the check to Schneider and requested that it be paid; that Schneider took a package of bills and "started counting them out to the undersigned in payment of said check"; that Schneider then stepped to a telephone to answer a call, then returned and told Walker that the check would not be paid; that after a conversation between Hennessy, the cashier, and Schneider, the teller, Walker was informed by the cashier that the check would not be paid, that the bank was going to close and "was in the hands of the State," and that after some conversation about his deposit Walker was informed that the bank had closed and that he should leave, which he did shortly thereafter.

Walker testified at the hearing on the petition for the allowance of his claim against the bank. He stated that when he presented his check to the teller after it had been "O.K'd." by the cashier, the teller took up

a bunch of bills and that "I know he counted it all out there"; that Hennessy and Schneider then had a talk and that Schneider then informed the witness that the bank would pay back the deposit which the witness had just made amounting to $249.00, which was done. On cross-examination, the witness testified that the amount of his check had all been counted out by the teller at the time the witness was informed that the check would not be paid.

Schneider, the teller, testified that when the check was presented after it had been "O.K.'d.," he "had not counted out the full amount of the check," and that the reason he had informed Walker that his check must be "O.K.'d" by an officer, was because the rule of the bank required such a procedure when a customer was drawing out his entire balance.

It was stipulated by the parties that at the time the bank closed, claimant's balance on deposit was $2,235.01, which was less than the amount of claimant's check, and that the rights of the claimant should and would not be prejudiced by this difference, provided the claimant limited his claim to the amount of $2,235.01.

The receiver insists that the relationship between the claimant and the Bryn Mawr State Bank at the time the bank was closed was that of debtor and creditor, and that the circumstances in connection with the refusal of the bank to cash claimant's check as shown by the evidence, gave the claimant no right to priority of payment over general creditors of the bank; that the demand for payment, and the "O.K'ing" of the check by the cashier did not change the relationship and make the bank a trustee of claimant's deposit so as to constitute it a trust fund. The claimant's position is that in view of the fact that the bank was seemingly solvent and open and doing business when the check was presented, and its payment demanded and refused, that thereby his deposit became

a trust fund; that the bank held it as trustee, and that such claimant is entitled to a priority over the general creditors of the bank.

In 7 Corpus Juris, sec. 326, page 641, it is said:

"The relations between a bank and a depositor may be dual in character, the bank being the depositor's debtor with respect to one thing and his agent with respect to another, or his debtor at one time and his agent at another; and while the relation between the bank and a depositor in respect to a general deposit is generally regarded as that of debtor and creditor, yet in another sense the depositor is the owner of the deposit, in that he can demand repayment at any time."

The relationship between a bank of deposit and its depositors in this State is construed and defined in *People v. Farmers State Bank,* 338 Ill. 134, as follows:

"As to whether or not the account was a trust fund under the facts in this case depends primarily upon the kind of deposits made by plaintiff in error. There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor. As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes the creditor of the bank. Such deposit then constitutes a part of the assets of the bank, and in case of insolvency of the bank that deposit belongs to the creditors of the bank in proportion to the amount of their respective claims. Well recognized exceptions to this rule are, first, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and

third, where the deposit itself was wrongful or unlaw-ful.''

In this latter case, it was held that where the treasurer of a school district deposited school funds in the savings account of a bank with no direction that the funds should be kept separate and apart from other funds, that therefore such deposit was general and the depositor was not entitled to a priority of claim over the general creditors of the bank.

The rule as stated in this latter case seems not to be in issue here, and the only question to be determined is whether or not the claimant's deposit acquired a different character because of his presentation of his check, under the circumstances in evidence, at a time when the bank was apparently doing business as usual. It seems not to be disputed that the Bryn Mawr State Bank was insolvent on the 9th day of June, 1931, the day upon which claimant presented his check. The bill filed in the superior court of Cook county ex rel. Oscar Nelson, auditor of public accounts, a part of the record in this court in the instant case, recites that on June 9th, 1931, the auditor had determined that the resources of said bank as set forth in the . . . bill, and as carried on the books of said corporation, were erroneous, and did not, correctly reflect the true value thereof and that the value of certain items of resources in said bank did not equal the amounts respectively for which such resources were carried on the books of the corporation. It is further recited in this bill that on the 9th day of June, 1931, the bank was indebted to depositors, and on account of bills payable and discounts in the sum of $690,997.84, and that as a result of said examination and investigation the auditor determined that the resources of the bank, as carried on the books of the corporation, were erroneous, and did not correctly reflect the true value thereof, and that the value of certain items of resources did not equal the amounts respectively for which said resources

were carried on the books of the corporation. It is further alleged that the capital stock of the bank had become so impaired that the condition of the bank was such that the impairment of the stock could not be made good, and that the bank was being conducted in an unsafe manner, and that on account of and by reason of the condition of the bank, Oscar Nelson, auditor of public accounts of the State of Illinois, did on the 9th day of June, 1931, assume control of the bank. The morning of June 9th, 1931, was the time when the check was presented for payment.

Cahill's Ill. Rev. Statutes, 1931, ch. 16a, ¶ 11, under which the examination of the bank in question, and the assumption of control of such bank as hereinbefore set forth were made, provides for the liquidation of the bank, and provides that the auditor shall appoint a receiver and ''cause notice to be given by advertisement, . . . calling on all persons who may have claims against such bank to present the same to such receiver and to make legal proof thereof. *From time to time the Auditor of Public Accounts shall make a ratable dividend of the moneys collected* by such receiver on all such claims as may have been proven to his satisfaction or adjudicated in a court of competent jurisdiction, and as the proceeds of the assets of such bank are collected, shall make further dividends on all claims previously proved or adjudicated.'' (Italics ours.)

From the record, it seems evident that the examination of the affairs of this bank by the auditor had been completed at about the time when the claimant presented his check for payment, and the statement by the cashier to the claimant that the bank ''was in the hands of the state'' at the time the payment of claimant's check was refused, indicates that the auditor had then assumed control of the bank, under the authority provided by the statute. There is nothing in the record to the contrary.

In 7 Corpus Juris, sec. 542, page 749, cited by appellee, it is said:

"The relation which the depositors of an insolvent bank bear to the funds which have been, or are to be, distributed by order of court is fixed as of the time when the superintendent of banks closed the bank and took possession of its assets."

Under the circumstances, the officers of the bank had no discretion in the matter. It was their duty to refuse payment of the check. We are of the opinion that the court was in error in entering the order directing the receiver to pay the Walker check as a preferred claim.

The order of the superior court is reversed.

*Reversed.*

HEBEL, J., concurs.

WILSON, J., dissenting: I am not in accord with the majority opinion. At the time Walker presented his check for payment, the bank was open and doing business. It is the legal obligation of the bank to pay upon demand and its refusal so to do is an adverse holding of the money as against the depositor. Whether the bank closed its doors under an order an hour later or a week later would in my opinion make no difference as to its legal liability. When the bank refused to honor the check, it held the money of Walker deposited with it as a trust fund subject to whatever future contingencies might arise. The fact that he was directed to go to the cashier to get an O.K. on the check did not relieve the bank of the liability after Walker's original demand for the full amount of his deposit. *Claxton v. Cantley* (Mo. App.), 297 S. W. 975; *Bryan v. Coconut Grove Bank & Trust Co.*, 101 Fla. 947, 132 So. 481, 134 So. 229; *McQueen v. Randall,* 353 Ill. 231; *People v. Peoples Bank & Trust Co. of Rockford,* 353 Ill. 479.