In re Receivership of The National Bank of Ottawa. Charles Eichelkraut and William Eichelkraut, Trading as Eichelkraut Brothers, Defendants in Error, v. Urban Tracey, Receiver of The National City Bank of Ottawa et al., Plaintiffs in Error.

Gen. No. 8,688.

Opinion filed February 19, 1934.

H. L. Richolson, for plaintiffs in error.

Hibbs & Pool, for defendants in error.

MR. JUSTICE DOVE delivered the opinion of the court.

On September 30, 1931, The National City Bank of Ottawa suspended business and subsequently Urban Tracey, plaintiff in error, was appointed receiver thereof. On January 4, 1932, as such receiver, he filed in the circuit court of LaSalle county, at the direction of the comptroller of the currency, his petition praying for an order authorizing him to sell certain bonds of the bank, some of which had been pledged in the trust department of the bank and others deposited with the auditor of public accounts of this State. A hearing was had upon this petition and the prayer thereof granted. Subsequently and upon notice to the receiver, leave was granted Charles H. Eichelkraut and William Eichelkraut, partners, doing a general contracting business as Eichelkraut Brothers, to intervene and file a cross petition and their cross petition was filed and subsequently amended. To this cross petition Urban Tracey, the receiver, and Oscar Nelson, auditor of public accounts of the State of Illinois, were made parties defendant. Separate answers were filed by each defendant, to which replications were filed and the cause set for hearing. Thereafter, but before a hearing was had upon the merits of the cross petition, the receiver filed his petition in the circuit court, by which he sought to remove the cause to the United States District Court for the Northern District of Illinois. The circuit court denied the prayer of this petition, and the receiver then caused a transcript of the record to be filed in the United States District Court, but that court remanded the cause to the circuit court of LaSalle county. Subsequently, a hearing was had upon the cross petition, and a decree rendered, granting defendants in error the relief sought in the cross petition and the record is brought to this court for review by writ of error.

The cross petition, as amended, alleged that in April, 1931, Eichelkraut Brothers entered into a con-

tract with the Ottawa Building Corporation, by which they undertook to reconstruct the Gayety Theater in Ottawa, and were to receive therefor $28,420; that this contract price was to be deposited by the Ottawa Building Corporation in The National City Bank of Ottawa, and was there to remain intact as a trust fund until the final completion of the contract and until E. P. Rupert, the architect, furnished a certificate showing its completion in accordance with the reconstruction plans and specifications, and that upon the furnishing of such certificate, the bank should thereupon pay to Eichelkraut Brothers said contract price.

The cross petition further alleged that the Ottawa Building Corporation deposited said sum with said bank in trust and that the same was so received by the bank, as evidenced by the following instrument directed to Willard S. Gay and Dorothy Mills Gay, owners of the real estate upon which the theater was to be reconstructed, viz.:

"Ottawa, Illinois, May 12, 1931.

"To Willard S. Gay and Dorothy Mills Gay:

"As Cashier of the National City Bank of Ottawa, Illinois, the undersigned hereby certifies that there is on deposit at this time a certain trust account in the National City Bank of Ottawa, Illinois, known as the 'National City Bank, Trustee, Ottawa Building Corporation,' in the sum of Twenty-eight thousand four hundred twenty Dollars ($28,420.00), which has been deposited in said trust account to guarantee the rebuilding of the burned building on the real estate known as Lot One (1) and the North Sixty (N. 60) feet of Lot Two (2), in Block Eighty-five (85), in the State's Addition to the City of Ottawa, in the County of La Salle and State of Illinois.

"I further certify that said sum of Twenty-eight thousand four hundred twenty Dollars ($28,420.00) will remain intact in such trust fund until the final completion of the remodeling, reconstruction or re-

building of said structure, as per the terms of a certain lease agreement recorded on February 5, 1931, in the Recorder's Office of said La Salle County, Illinois, in Book 687 of records, page 308, and as is more fully set out in detail in a contract now on file with said National City Bank in connection with said trust account, and which said contract is executed by Charles Eichelkraut and William Eichelkraut, doing business as Eichelkraut Brothers, of the one part, and the Ottawa Building Corporation, of the other part, and until E. P. Rupert, the architect of said building, or his successor, shall have furnished a certificate showing the final completion of said structure, in accordance with the provisions of the contract therefor. Upon the furnishing of said certificate by said architect, the said National City Bank, of Ottawa, Illinios, will pay to said Eichelkraut Brothers the said sum of Twenty-eight Thousand Four Hundred Twenty Dollars ($28,420.00).

"S. R. Lewis,
"Cashier, National City Bank"

The cross petition further alleged that petitioners complied with their contract in every particular, and received a certificate from the architect on September 29, 1931, and by and with the consent of Willard S. Gay and Dorothy Mills Gay, the bank paid petitioners $18,714.25 by crediting that amount upon notes of petitioners which the bank then held, and that there remains in said account the sum of $9,705.75; that on November 7, 1931, petitioners delivered to the receiver a final certificate from the architect, together with a written instrument executed by Willard S. Gay and Dorothy Mills Gay, by which they consented to the payment of this balance to petitioners.

The cross petition further alleged that the National City Bank was a national bank and qualified under the laws of the United States to act as trustee and in other

fiduciary capacities and so acting, it did segregate from time to time from the general assets of the bank, certain bonds and securities as required by law. The petition charges, however, that the bank did not segregate any of its assets in order to protect and secure the money so held by it on deposit as trustee for petitioners. The cross petition further alleged that under the laws of this State, said bank also qualified to carry on a general trust business, and that at the time it suspended business it had on deposit with the auditor of public accounts bonds in the principal sum of $50,000, issued by the sanitary district of Chicago, which were held by the auditor for the benefit of petitioners and other trust creditors. The cross petition prayed that these bonds be sold for the benefit of petitioners and other trust creditors and the proceeds applied toward the payment of their respective claims.

The answer of the auditor of public accounts admits that he has in his possession and control, as auditor, bonds in the principal sum of $50,000 held by him to secure the trust creditors of the bank, but he neither admits nor denies the other allegations of the cross petition.

The answer of Urban Tracey, receiver, denies that the Ottawa Building Corporation deposited in The National City Bank the sum of $28,420 at the time of the execution of the contract as set forth in the petition, admits that said bank was qualified under the laws of the United States and the laws of Illinois to carry on a general trust business and admits that said bank kept bonds on deposit with the auditor of public accounts of the value of $50,000, but denies that said bonds or any bonds held by the bank were held for the benefit of petitioners, but alleges that the relationship of debtor and creditor existed between petitioners and said bank, and that the deposit of petitioners was a commercial deposit, did not constitute a trust fund and

was not one which the bank was required to protect with a deposit of bonds.

Upon the hearing the court entered a decree finding that the $28,420 deposited with the National City Bank constituted a special trust fund, and that the portion thereof remaining on deposit at the time the bank suspended business, amounting to $9,705.75, is protected by and secured under the laws of this State by the bonds of the sanitary district of Chicago, deposited by the bank with the auditor of public accounts, and ordered that said bonds be sold at the current market price and the proceeds paid pro rata to defendants in error, and the receiver, for the benefit of other trust creditors of the bank, to the extent of any deficiency which might be due them after the bonds and securities which had been segregated by the bank as security for other trust creditors had been applied in payment thereof, and in the event the proceeds of sale from said bonds were insufficient to pay the trust creditors in full, that then petitioners should have a general claim for the amount of such deficiency.

The evidence discloses that Willard S. Gay and Dorothy Mills Gay were the owners of certain improved premises in Ottawa, known as the Gayety Theater and which had been damaged by fire. These premises had been, by the owners, leased to the Ottawa Building Corporation, and under the terms of its lease, the Ottawa Building Corporation undertook the reconstruction of the theater. In order to guarantee the full and complete performance of the reconstruction work in accordance with the plans and specifications therefor, which had been prepared by E. R. Ruppert, architect, the lease provided that the lessees should place in escrow a sum of money equal to the estimated cost of construction. Defendants in error are general contractors, and on April 7, 1931, they entered into a contract with the said Ottawa Building Corporation to re-

construct said building according to said plans for a consideration of $28,420. By a supplemental agreement it was provided that the Building Corporation should deposit with the National City Bank of Ottawa the full contract price, which was to remain intact as a trust fund until the final completion of the building and until the architect furnished a certificate that the structure has been completed in accordance with the provisions of the contract, and at that time the bank should pay defendants in error the contract price.

On April 30, 1931, the bank opened an account upon its books designated as "National City Bank, Trustee, Ottawa Building Corporation" and the Ottawa Building Corporation transferred to that account $16,000 which it had on deposit with said bank. On the following day the bank loaned defendants in error $12,420 upon their note and the proceeds thereof was placed in this account. As a part of the same transaction, the bank, by its cashier, executed and delivered the instrument dated May 12, 1931, addressed to Willard S. Gay and Dorothy Mills Gay, hereinbefore referred to.

The evidence further discloses that defendants in error rebuilt the theater building in accordance with their contract, and on September 29, 1931, the architect issued his certificate that the work had been completed and waivers of liens executed and delivered by all contractors and subcontractors, except certain ones who had claims aggregating $9,705.75. Upon the execution and delivery of this certificate, and by and with the consent of Willard S. Gay and Dorothy Mills Gay, the bank withdrew from said account the sum of $18,714.25, so held by it on its books to the credit of itself as trustee, and notes of that amount of defendants in error, which the bank held were canceled and discharged. This transaction left a balance in this account of $9,705.75. On the following day the bank suspended business.

On November 17, 1931, the architect issued his final certificate to the effect that all material and labor had been paid for and that defendants in error were entitled to receive the balance of the fund on deposit in the bank. This certificate, together with a statement of the owners of the premises to the same effect, was delivered to the receiver in December, 1931, and subsequently a preferred claim was filed by defendants in error, but was disallowed by the comptroller of the currency.

It is first contended by plaintiff in error that his petition for an order authorizing him to sell the bonds of the bank which he was liquidating had been heard and disposed of by the court entering an order of sale in accordance with the prayer of his petition and that the filing of the intervening petition by defendants in error was equivalent to filing a suit against plaintiff in error as receiver, and that the circuit court should not have permitted the cross petition to have been filed as the questions presented therein were cognizable only in the federal court to which court this cause should have been transferred. It will be observed that the receiver, under authority of the comptroller, submitted himself to the jurisdiction of the circuit court of LaSalle county and obtained an order therefrom authorizing the sale of the bonds, a portion of the proceeds of which are ordered in this proceeding to be paid defendants in error. Before any sale was had of these bonds, however, defendants in error, upon notice to the receiver, were granted leave to file their intervening or cross petition. No objection was made by the receiver to the entry of that order. The intervening or cross petition was filed. The auditor of public accounts and the receiver filed separate answers thereto and no question of jurisdiction was raised by either of the respondents in their several answers. It was after the issues had been made up and the cause set

for trial that the receiver filed his petition and bond for removal of the cause to the United States District Court, and because it came too late, the circuit court properly denied the prayer of the petition. A transcript of the record, however, was filed by the receiver in the District Court, and that court, upon a motion by defendants in error, remanded the cause to the circuit court. The United States Code, sec. 71 of Title 28, provides that whenever any cause shall be removed from any State court to a District Court, and the District Court shall decide that the cause was improperly removed and order the same remanded, no appeal or writ of error from the decision of the District Court shall be allowed.

In *Missouri Pac. Ry. Co. v. Fitzgerald,* 160 U. S. 556, it was held that an order of a District Court of the United States remanding a cause to the State court cannot be reviewed by appeal, writ of error or in any manner, but that a remanding order of such District Court is final and conclusive. See also *Pacific Live Stock Co. v. Lewis,* 241 U. S. 440.

It is true that prior to the application of defendants in error to intervene, an order had been entered upon the original petition of plaintiff in error, but among the bonds sought to be sold by plaintiff in error were those deposited with the auditor of public accounts to secure trust creditors of the bank, and defendants in error, by their intervening petition, insist that they belonged to that class of creditors. In our opinion, inasmuch as plaintiff in error had submitted himself to the jurisdiction of the lower court and sought an order granting him authority to sell certain assets of the bank, it was eminently appropriate for defendants in error to invoke the jurisdiction of the same court to determine the issues raised by their intervening petition. Furthermore, the motion to intervene was allowed, only after notice and a full hearing, and no ob-

jection thereto was made by plaintiff in error. The answer of both respondents to the intervening petition raises no question as to the right of defendants in error to intervene and submit their controversy to the circuit court. Of course the matters sought to be adjudicated in this proceeding are cognizable in a federal court, but we know of no reason why they cannot be adjudicated in a State court when the parties voluntarily submit themselves to the jurisdiction of a State court. Inasmuch as plaintiff in error made no objection to the filing of the cross petition, but filed his answer thereto in which he did not question the right of defendants in error to intervene, plaintiff in error cannot, for the first time, raise in this court a question which was not presented to the court below. *Ortmeier v. Ivory,* 208 Ill. 577.

Plaintiff in error next contends that, for two reasons, the transaction in question did not create a special deposit or trust fund: First, because the money, at the time it was deposited, was not the money of defendants in error, and second, no effort was made by any of the parties to have the money segregated, but all the parties contemplated, at the time the fund, amounting to $28,420, was created, that it was to be mingled with the general funds of the bank. The evidence discloses that the Ottawa Building Corporation had $16,000 on deposit in the bank on April 30, 1931, and by its act that sum was placed to the credit of the account designated on the books of the bank as "National City Bank, Trustee, Ottawa Building Corporation." All the parties to this transaction knew that the Ottawa Building Corporation had contracted with defendants in error to reconstruct the theater building, and the building corporation was to be the beneficiary of the work done by defendants in error. In fact, this was a payment in escrow upon this contract. On the next day, defendants in error executed their

note to the bank for $12,420. The bank accepted their note and credited the proceeds thereof to this account, and these two credits aggregate the $28,420. Plaintiff in error insists that the assets of the bank were not increased by either of these transactions, but he is clearly in error. The law does not require useless things to be done, but had the Ottawa Building Corporation withdrawn its $16,000 which it had on deposit on April 30, 1931, and on the same day returned that amount to the bank, no one would contend that the assets of the bank would not have been increased to the extent of $16,000 when that amount was returned, and certainly the assets of the bank were increased the next day when defendants in error executed and delivered their note to the bank for the sum of $12,420. The assets were not only increased, but the evidence discloses that the note evidencing this indebtedness was subsequently paid by defendants in error, and that at the time their cross petition was filed, they were not indebted to the bank in any amount. That this $28,420 was a trust fund and was so regarded by all the parties, including the bank, cannot be doubted. The written instrument executed by the bank designates this account as a trust account, and the bank certifies that the sum of $28,420 will remain intact in this trust fund until the completion of the reconstruction of the burned building. It is immaterial how this fund came into the bank, and it does not matter how the bank saw fit to carry it on its books. The bank obtained the fund. It executed a written declaration of trust. A trust relationship was created, the balance of $9,705.75 concededly belongs to defendants in error, and they are entitled to it under the provisions of the trust agreement, and having determined that it was a trust fund, the next inquiry is to determine whether it is protected by the bonds which the bank had deposited with the auditor of public accounts.

Under the laws of this State, it would have been unlawful for the National City Bank to accept this trust without procuring from the auditor of public accounts a certificate of authority stating that it had complied with the requirements of the Trust Company Act, Cahill's Ill. Rev. St. 1933, ch. 32, ¶ 345 *et seq.* This certificate of authority is obtained by depositing with the auditor $50,000 in bonds or mortgages upon real estate as in the act provided. The National City Bank complied with this statute, deposited bonds of the sanitary district of Chicago as required, and received its certificate of authority. The statute provides that these bonds should be registered in the name of the auditor officially and held by him for the benefit of the creditors of the bank. In our opinion defendants in error are creditors of this bank within the meaning of this act, and are entitled to have their trust claim, along with all other trust claims so protected, satisfied out of the proceeds of these sanitary district bonds so held by the auditor.

The object and purpose of the Trust Company Act, as suggested by counsel for defendants in error, is to afford trust creditors a measure of protection at least that is not afforded general creditors of the bank. The creditors protected by the securities in the hands of the auditor are those whose claims arise because the bank accepted an appointment which it was authorized to accept by virtue of this act. The right to resort to these securities depends upon whether the bank was in possession of and liable for trust funds by virtue of an appointment it was authorized to accept under the act regulating trust companies.

The decree in this case properly protects the interests of all trust creditors, is in accordance with the law and the evidence and is affirmed.

*Decree affirmed.*