The People of the State of Illinois ex rel. Oscar Nelson, Complainant, v. Chicago Bank of Commerce, Defendant.

William L. O'Connell, Receiver of Chicago Bank of Commerce, Plaintiff in Error, v. Josephine Glynn, Defendant in Error.

Gen. No. 37,918.

Opinion filed November 5, 1935.

SCHUYLER, WEINFELD & HENNESSY, of Chicago, for plaintiff in error; C. ERNEST HEATON and HERBERT M. JOHNSON, both of Chicago, of counsel.

HARRINGTON & McDONNELL, of Chicago, for defendant in error; JOSEPH T. HARRINGTON, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

William L. O'Connell, receiver of the Chicago Bank of Commerce in a dissolution proceeding pending in the circuit court, sued out a writ of error to review a decree entered July 12, 1933, finding the deposit liability of said bank to Josephine Glynn, petitioner, amounting to $15,035, to be a prior and preferred claim, and directing said sum to be paid out of the receivership estate in the due course of administration.

From the undisputed facts it appears that on June 24, 1932, Josephine Glynn was a depositor in the Union Bank of Chicago, which had in 1931 issued to her its passbook No. 31457. In October of that year all deposit liabilities of said bank, including petitioner's, were transferred to the Chicago Bank of Commerce. Petitioner's total savings deposit amounted to $15,035. June 24, 1932, at about one o'clock in the afternoon she entered the bank and made out a withdrawal receipt against the entire balance in her account and presented same to the teller of the bank, who referred her to John G. Nichols, assistant cashier in charge of savings, for his approval. Nichols marked the withdrawal receipt "O. K. J. G. N.," and handed it back to her, saying that because of the unusual request for withdrawal of such a large amount the savings department did not then have sufficient currency of large denominations, and he requested her to be seated and wait until a messenger, who he said had been dispatched to the Continental Illinois Bank & Trust Co. for larger currency, should return. Petitioner took a seat and waited for about half an hour. Growing impatient, she went over to see Nichols, who told her the messenger had not yet returned and that she should await his arrival a little

while longer. She again waited a considerable time and then returned to Nichols, who said that in the excitement and rush of business he had forgotten all about her; that the bank had that day paid many heavy withdrawals; that the tellers had closed their books and turned their keys over to the auditing department of the bank; that the money was locked up in the vault; and he suggested that if she would come back the next morning the bank would take care of her. When she returned the next morning the bank was closed and in charge of the auditor of public accounts, and she was unable to gain entrance or see Nichols. It is conceded that at the closing of the bank, June 24, 1932, there was cash on hand in the sum of $27,443.10.

After overruling exceptions to the report of the master to whom the case had been referred for hearing, the court entered a decree finding, *inter alia*, "that upon presentation of the withdrawal receipt in question, the funds immediately became and were trust funds, rightfully belonging to petitioner, and that neither the bank nor the receiver therefor had any title to such funds; that said funds never, promptly after the presentation of the said withdrawal receipt, became either the property of the bank or of the receiver therein," and decreed that the sum of $15,035 be allowed petitioner as a preferred claim to be paid to her out of the funds in the hands of the receiver in due course of administration.

It is conceded that when petitioner entered the bank June 24, 1932, she was merely a general creditor of the bank. Title to the money which she had theretofore deposited passed from her to the bank and the relationship of debtor and creditor was created. Her deposits constituted a part of the bank's assets and under ordinary circumstances she would have had no right to a preference when the bank became insolvent, but would have shared pro rata with the bank's general creditors.

To this general rule there are several exceptions, stated in *People v. Stony Island State Savings Bank,* 358 Ill. 118, as follows:

"First, where money or other thing is deposited with the understanding that the particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used or applied for a specifically designated purpose; and third, where the deposit is wrongful or unlawful. To make a deposit a special one the bank must be made an agent or trustee rather than a debtor, and its agency or trusteeship cannot be created out of the mere external relation of debtor and creditor unless the deposit is wrongful or the law forbids the bank becoming a debtor."

Petitioner first seeks to bring herself within these exceptions by advancing the theory that when Nichols approved the withdrawal slip presented by her, a new agreement or contract was entered into with the bank which changed her status as a depositor and constituted the bank as her agent for the safekeeping of the funds. This theory appears to be an afterthought, however, for the intervening petition is predicated upon "the wrongful and willful, fraudulent and negligent act of said officers . . . in refusing to make payment," when sufficient funds were on hand to meet her demand, and the augmentation of the bank's assets "assumed and taken over by the receiver." The petition does not allege a new agreement nor does it charge that an agency was created by reason of the circumstances. It is averred that Nichols "advised" her at the time that the tellers had closed their reports, balanced their books, and that "all cash had been transferred to the vaults" in accordance with the usual practice of that department, and "advised" her that if she would return the following day the sum demanded by her would be paid. The master's report finds that Nichols "suggested" that she come back the

following morning, and the decree finds that "he suggested that she come back the following morning." Nichols testified that the cash, which by stipulation of the parties amounted to $27,443.10, had been put in the vault and that there was sufficient currency on hand to meet petitioner's demand. There is nothing in the record, however, to sustain the claim that the particular amount of $15,035 had been segregated and placed in the vault by the bank as her agent, or that any new agreement was made by the parties to change the relationship of creditor and debtor.

Petitioner's major contention, and the theory upon which the matter was tried before the court and master, is that the conduct of the assistant cashier was so tainted with fraud as to constitute the bank a trustee, *ex maleficio,* and impressed the general funds of the bank with a trust in her favor for the sum of $15,035. The receiver contends that petitioner acquiesced in the course of conduct pursued by the bank, and that the bank at no time on June 24, 1932, refused to pay her the sum on deposit. A considerable portion of both briefs is devoted to arguments pro and con upon this question. Manifestly the assistant cashier was seeking delay. All the events disclosed by the evidence transpired between one and two o'clock. Petitioner demanded her money, her withdrawal slip had been approved by Mr. Nichols, and we think the bank's conduct amounted to a refusal to pay petitioner the funds demanded. Therefore, the question presented is whether the demand and refusal operated to create a trust in favor of petitioner. It has been so held in some jurisdictions (*Bryan v. Coconut Grove Bank & Trust Co.,* 101 Fla. 947; *Johnson v. Farmers' Bank of Clarksdale,* 223 Mo. App. 513, 11 S. W. (2d) 1090; *Claxton v. Cantley* (Mo. App.), 297 S. W. 975), but the weight of authority is decidedly to the effect that no trust can arise in favor of a depositor under the cir-

cumstances of this case. This court has considered and passed upon the principles involved in cases presenting similar facts.

In *People v. First Italian State Bank*, 281 Ill. App. 1, the petitioners, Matteo Pennisi and Angela Pennisi, had on deposit in their savings accounts with the First Italian State Bank the respective sums of $500 and $1,522.50. Various demands for payment had been made by claimants and by their bank for them on defendant bank, and all requirements as conditions precedent to the right of payment had been fully complied with. It was not disputed that a customer's demand draft had been signed by petitioners for $1,522.50, which was drawn and forwarded to defendant bank by Harris Trust & Savings Bank for collection. It was there contended that when the Harris Trust & Savings Bank presented to defendant bank the demand draft signed by petitioners it became the duty of the bank to pay the draft by collecting the amount thereof from the savings accounts of petitioners in defendant bank. Relative to this situation the court said:

''We are of the opinion that neither by the presentation of a check in person by the depositor, nor by a demand made through the presentation of a draft by a drawee bank upon a depositary bank and refusal to pay, is the amount segregated from the general fund or the deposited money made a trust fund separate and apart from the general assets; that such act of the debtor in refusing to pay would justify the creditor in maintaining an action to recover the amount due and to participate as a general creditor in the funds of the bank.

''In the instant case, the acts of the parties do not indicate that it was the intention to create a fund separate and apart from the general assets of the defendant bank, and the evidence does not disclose anything but that the defendant's refusal to pay the draft was

its inability to meet the demand. There is no evidence that the bank collected the amount of the depositors' accounts with the defendant, or that such collection was deposited by such bank to its account.

". . . In this case there was no understanding by the parties that the particular money deposited was to be returned, or that the money deposited was to be used for a specific purpose. The money so deposited was not wrongfully received by the bank. The claimants, by the deposit of the funds in defendant's bank, and from the facts as they appear in evidence, can only be regarded as general creditors, and the fact of the demand did not establish their claim as a preferred claim to be paid prior to the claims of the general creditors. The court, therefore, in allowing their claim as a claim to be paid together with the claims of all general creditors, did not err. For the reasons indicated, the decree of the chancellor is affirmed."

In *People ex rel. Nelson v. Bryn Mawr State Bank,* 273 Ill. App. 415, a depositor in a state bank inquired of the teller therein the amount of his account and thereupon wrote a check for the balance, presented same and demanded its payment. At the direction of the teller the check was taken to an officer of the bank, whose approval was indorsed thereon. When the check was again presented the teller began to count out the money. He was called to the telephone and upon his return he told the depositor that the bank was in the hands of the state auditor, and refused to pay the check. The court held that the depositor was not entitled to have his check paid by the bank's receiver as a preferred claim on the theory of a trust fund. One of the justices dissented, holding that since the bank was open and doing business when the check was presented for payment, it became the legal obligation of the bank to pay upon demand and that when the bank refused to honor the check it held the amount on

deposit as a trust fund subject to any future contingencies that might arise, citing the Florida and Missouri cases hereinbefore cited.

It is urged by the receiver that for the creation of a trust there must be a segregation of funds or an augmentation of the assets of the bank. This doctrine is clearly stated in *Leach v. Sanborn State Bank,* 203 Iowa 401, as follows:

"The right to reclaim a trust fund is predicated on a right in property, and not on the theory of compensation for its loss; although it is not material whether the subject of the trust was in the form of money or other property. It must appear, at least by presumption, that it reached the receiver, so as to increase, in some form, the assets in his possession from which it may be taken without infringing the rights of creditors. . . .

"To enforce a preferential claim on the theory of a trust, and to establish the claim against the assets in the hands of a receiver of a bank, the trust funds must be traceable to or serve to augment the assets of the bank to the extent thereof."

This doctrine has been approved by our courts in *Howland v. People,* 229 Ill. App. 23, and *In re National Bank of Ottawa,* 273 Ill. App. 545. In *Blakey v. Brinson,* 286 U. S. 254, a savings depositor in a national bank, pursuant to conversations with the bank's officers, increased his account by deposit in the usual way to an amount sufficient to pay for some bonds which the bank had undertaken to purchase for him. Later the officer told him that he had obtained the bonds, and handed him a charge slip showing the cost, including principal, accrued interest, and commission. The total was charged against the depositor's account and credited on the bank's books as a deposit in a bond account. Soon afterward the bank closed its doors, and it was discovered that no bonds had in fact been pur-

chased, ordered or received for the depositor. The court disregarded the debit entry and held that no trust had been created, and that the depositor continued to be a general creditor. Mr. Justice Stone, speaking for the court, said:

"The court below thought that the legal consequence to be attributed to the debiting of the account'with the supposed purchase price of the bonds was the same as if the respondent had cashed a check for the amount and had then proceeded to hand the money back to the bank under a specific agreement between him and the bank that the money was to be held as a special fund, for the sole purpose of completing the purchase. This view is not without support. (See *Davis v. McNair,* 48 F. (2d) 494; *State v. Grills,* 35 R. I. 70, 75, 85 Atl. 281; *Northwest Lumber Co. v. Scandinavian American Bank,* 130 Wash. 33, 225 Pac. 825; *State v. American Exchange Bank,* 112 Neb. 834, 201 N. W. 895. See, contra, *Beard v. Independent District of Pella City,* 88 Fed. 375, 381; *Mark v. Westlin,* 48 F. (2d) 609; *First National Bank v. Williams,* 15 F. (2d) 585; *Howland v. People,* 229 Ill. App. 23; *Miller v. Viola State Bank,* 121 Kan. 193, 246 Pac. 517; *People v. Merchants & Mechanics' Bank of Troy,* 78 N. Y. 269; *Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co.,* 242 Mass. 181, 136 N. E. 333.) Such a procedure, if actually carried out, might afford a basis, which is lacking here, for the inference that respondent, no longer content with the role of creditor, had sought to establish a trust fund. But the mere debiting of his account, without more, for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid, lends no support to such an inference. The cancellation of the credit balance by the debit neither suggests any intention to establish a trust nor points to any identifiable thing which could be the subject of it."

In *Clark v. Chicago Title & Trust Co.*, 186 Ill. 440, Clark had over $3,000 on deposit in the Globe Savings Bank of Chicago. On Saturday, April 3, 1897, shortly before 12 o'clock of that day he obtained a cashier's check for $3,000 payable to his order, which was deposited in another bank. Monday morning the check was thrown out by the clearing house, the Globe Savings Bank having meanwhile passed into the hands of a receiver. Thereafter Clark filed an intervening petition in the receivership proceedings alleging that by virtue of the cashier's check the bank had assigned to him $3,000 in cash and credited itself with that sum, leaving petitioner with a deposit of $60.30, and that appropriate entries were made in his passbook, as shown by the evidence. The receiver's answer averred that no money was in fact set apart by the bank when the check was drawn, but that a credit merely was changed from the passbook to a cashier's check, and that the relationship of creditor and debtor between the bank and depositor was in nowise changed, and that no separate fund came into the hands of the receiver. In commenting on this branch of the case, the court said:

"The check was not drawn by a depositor against a deposit, but was simply an acknowledgment of an indebtedness on the part of the bank to the payee of the order. As between the bank and appellant it was, in legal effect, the same as a certificate of deposit or a certified check."

Upon the authority of the foregoing decisions, we hold that there was no segregation of petitioner's deposit, no augmentation of the assets of the bank to the extent thereof, and that the relation between petitioner and the bank continued to be that of debtor and creditor.

It is with some reluctance that we reach this conclusion, because the circumstances of the case indicate that the assistant cashier must have known the bank's

condition when petitioner demanded her money and pursued a course of conduct which was evidently calculated to delay payment until the bank had closed its doors at two o'clock. However, the authorities in this State and the decisions of this court have consistently followed the conclusion here reached under similar circumstances, and with the exception of a few jurisdictions which hold otherwise, the rule laid down is generally followed. Undoubtedly one of the considerations leading to this conclusion is that an individual depositor should not be preferred as against the great body of depositors of defunct banks unless it can be clearly shown that the relationship of debtor and creditor has been changed or that his fund became impressed with a trust by reason of a segregation of the funds claimed or an augmentation of the assets assumed by the receiver. The facts in this case do not lead to that conclusion. Therefore, the decree of the circuit court will be reversed and the cause remanded with directions that the court below enter a decree ordering the claim of Josephine Glynn to be allowed as a general claim, payable in due course of liquidation of the Chicago Bank of Commerce pro rata with the bank's general creditors.

*Reversed and remanded with directions.*

SCANLAN, P. J., and SULLIVAN, J., concur.